Gerald E. BRAZONES, Special Administrator of the Estate of Karl Joseph Brazones, Larry Martin, Irene Martin, Allan D. Hansen, and Charlotte L. Hansen, Plaintiffs and Appellants,

v.

Jean PROTHE as the Special Administratrix of the Estate of Willard H. Prothe, and Danny B. Thornburg, Defendants and Appellees.

James SNYDER and Sunshine Snyder, Plaintiffs and Appellants,

v.

Jean PROTHE as the Special Administratrix of the Estate of Willard H. Prothe, and Danny B. Thornburg, Defendants and Appellees.

Joan MAGER, as Special Administratrix of the Estate of Ronald L. Mager, and in her individual capacity; and Jay E. Mager, Plaintiffs and Appellants,

v.

Jean PROTHE as the Special Administratrix of the Estate of Willard H. Prothe, Danny B. Thornburg, and Robert Shipman, Defendants and Appellees.

No. 17448.

Supreme Court of South Dakota.

Argued Dec. 2, 1991.

Decided Aug. 12, 1992.

Rehearing Denied Sept. 17, 1992.

Rick W. Orr, Lawrence L. Piersol, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiffs and appellants.

Mark K. Blongewicz, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Derald W. Wiehl, May, Johnson, Doyle & Becker, P.C., Sioux Falls, for defendants and appellees.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Gerald Brazones (special administrator of the estate of Karl Brazones), Larry Martin, Irene Martin, Allan Hansen, Charlotte Hansen, James Snyder, Sunshine Snyder, Joan Mager (special administratrix of estate of Ronald Mager, and in her individual capacity), and Jay Mager [1] commenced this action against Jean Prothe (special administratrix of estate of Willard Prothe), Danny Thornburg and Robert Shipman, respectively, arising out of a petroleum storage tank explosion, near Milford, Iowa, resulting in either injury or death to the plaintiffs. All relevant lawsuits were consolidated in this one action in July 1987.

In May and June of 1987, defendants filed motions to dismiss plaintiffs' complaints for *failure to state a claim.* Defendant Keearns also separately raised in his motion the issue of lack of personal jurisdiction. The trial court overruled all defendants' motions to dismiss, except Keearns on July 2, 1987. The court permitted defendants to re-assert these motions later and held in abeyance a decision on the jurisdictional issue raised by Keearns. The court subsequently granted Keearns' motion *based on lack of jurisdiction,* dismissing the complaints against him.

In November of 1988, defendant Prothe filed a motion for summary judgment on the issue of punitive damages. In February of 1989, the court granted this motion.

In January of 1990, defendants filed a motion for summary judgment based on an intervening decision by this Court. *Owen v. Owen,* 444 N.W.2d 710 (S.D.1989). At the May 1990 hearing on this motion, the trial court allowed plaintiffs additional time to file a motion to amend their complaints. In ruling on plaintiffs' motion to amend, the trial court granted plaintiffs leave to amend but refused to permit plaintiffs to join Williams Pipe Line (WPL) as a party-defendant. Following the amendment, the trial court entered its Order granting judgment on the pleadings and/or summary judgment as to Count I of appellants' amended complaints. On December 28, 1990, the court granted summary judgment in favor of defendants on Count II of the amended complaints.

On appeal, plaintiffs raise the following issues:

I. Did the trial court err in applying South Dakota law to this action?

II. Did the trial court err in entering an order for summary judgment?

III. Did the trial court abuse its discretion in refusing to grant plaintiffs' motion to amend pleadings to state a claim against Williams Pipe Line Company?

IV. Did the trial court err in ordering partial summary judgment in favor of estate of Prothe?

V. Did the trial court err in dismissing Ray Keearns as a party defendant?

Based on our decision in *Chambers v. Dakotah Charter,* 488 N.W.2d 63 (S.D. 1992), we affirm. Due to our determination on the first two issues, we need not consider plaintiffs' remaining issues.

## FACTS

This case arises out of an explosion at a petroleum storage tank owned and main-

---

1. Appellants are either former employees or the personal representatives of deceased employees of Williams Pipe Line Company. They will be referred to collectively as "plaintiffs." Appellees will be referred to collectively as "defendants." When necessary, parties will be referred to by their surname.

tained by WPL in Milford, Iowa on July 2, 1986. In July, 1986 plaintiffs Hansen, Brazones, Martin, Mager and Snyder were members of a maintenance crew employed by WPL. At the time of the incident, all of the plaintiffs were residents of Sioux Falls, South Dakota, worked for WPL and were based in Sioux Falls, although they served and worked in a multi-state area, including Iowa and Minnesota.

At the time of the incident, defendants were plaintiffs' superiors at WPL. Willard Prothe was the foreman of the plaintiffs' crew at Iowa and was a resident of Sioux Falls at that time. Danny Thornburg was division manager for WPL and was supervisor of all employees at the Sioux Falls terminal. He had responsibility over the Milford storage terminal. He lived and had his office in Sioux Falls. Robert Shipman was district manager of one of two geographical districts within the division. He was a Sioux Falls resident whose office was in Sioux Falls and he reported directly to Thornburg. His district included the Milford terminal, but not the Sioux Falls terminal. Ray Keearns, then WPL's manager of Environmental Affairs and Pipeline Safety was based in WPL's corporate office in Oklahoma. Keearns has responsibility for review and revision of WPL safety manuals, interpretation of pipeline safety and environmental regulations and liaison activities with regulatory agencies. Keearns lived in South Dakota from 1954 to 1960. He had been a resident of Oklahoma since 1967. He visited South Dakota four times in his corporate capacity since 1980 and had not visited the state on personal business for over twenty-five years.

WPL was the corporate employer of all the parties in July 1986. It is a common carrier of refined petroleum products by pipeline. WPL's corporate offices are located in Tulsa, Oklahoma where many of its operating functions are conducted. WPL's pipelines are located in ten midwestern states along with various pumping stations and terminal storage facilities. The company has been qualified to do business in South Dakota since 1965.

On July 2, 1986, the fatal explosion occurred inside the Milford storage tank, while plaintiffs were engaged in cleaning the tank. Snyder, Martin, Mager and Brazones were burned while inside the tank. Hansen and Prothe were outside the tank but also burned. Mager, Brazones and Prothe died as a result of their injuries. Snyder, Martin and Hansen sustained serious injuries from burns.

Many theories were identified as possible causes for the explosion. The most probable cause agreed upon was that the explosion was created by a spark from use of a metal scraper, thereby causing ignition of the fumes and vapors inside the tank. The Iowa State Fire Marshal agreed with this probable conclusion.

## DECISION

I. *Did the trial court err in applying South Dakota law to this action?* We hold that it did not.

As pertains here, an issue of a "conflict of laws" approach in South Dakota is a legal concern which has been in a state of flux since 1989, when the case of *Owen v. Owen*, 444 N.W.2d 710 (S.D.1989) was decided. In *Owen*, the nominal "majority" continued the application of the doctrine of lex loci delicti in multi-state tort actions, albeit adopting a public policy exception to that rule. Chief Justice Miller wrote a special concurrence in *Owen*, with which this author and Justice Sabers joined. This special writing advocated the rejection of the lex loci delicti approach completely and concomitant adoption of the choice-influencing considerations approach when facing conflicts of law problems. However, lex loci, with the added public policy exception, ostensibly held the day in South Dakota after our decision in *Owen*.

We have recently had an opportunity to revisit this question of which choice of laws approach to apply in multi-state tort actions. The recent decision by this Court in *Chambers v. Dakotah Charter*, 488 N.W.2d 63 (1992), settled this question in South Dakota. This Court in *Chambers* adopted the most significant relationship approach to govern multi-state tort con-

flicts. *Chambers*, at 67–68. We now apply that approach to the case before us.

■ Initially, we must define and delineate the most significant relationship approach:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Chambers*, at 67–68 (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). The principles to be considered under § 6 are:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Chambers*, at 68 (quoting Restatement (Second), *supra*, § 6 (1971)). We must apply this choice of law approach to determine which state has the most significant relationship to the occurrence and the parties involved. When the state with the most significant relationship is determined, we will then evaluate the employer's conduct to ascertain the standard of fault, if any, reached by its actions. By evaluation of what standard of fault the defendants' actions arose to, the applicability or non-applicability of the relevant workers compensation statutes of that state will be ascertained. Essentially, the dispute postured is: Which state's worker's compensation law applies in order to determine if an action in tort is allowed outside of the Worker's Compensation Act of that state?

■ In taking into account the contacts in determining the law applicable to the issue, it is conceded that Iowa is the place where the deaths and injuries occurred and where the conduct causing the deaths and injuries occurred. However, all of the plaintiffs were residents and domiciled in South Dakota. All plaintiffs were employed and based in South Dakota at WPL facilities located in South Dakota. All plaintiffs predominantly worked in South Dakota, although also working in Iowa and Minnesota. In addition, defendant Prothe was a resident and domiciliary of South Dakota, was based in and worked in South Dakota. Defendant Thornburg was also a resident and domiciliary of South Dakota. He was based in and worked in South Dakota. Only defendant Shipman was a resident and worked in Iowa. Defendant Kearns lived and worked in Oklahoma. Further, it is evident that the relationship of the parties was centered in South Dakota. The plaintiffs' maintenance crew was based in South Dakota. The division manager's (Thornburg) office of the district covered by the accident, was located in South Dakota. It is undeniable that the relationship of the parties was centered in South Dakota.

In considering these contacts, a number of factors are relevant to a choice of the

appropriate worker's compensation law. The factors are the relevant policies of the interested state; the relative interests of the states in determining the issue; the protection of justified expectations; and the basic policies underlying the particular field of law. We believe these factors favor the application of South Dakota law. We discuss the application of these factors below.

Both Iowa and South Dakota have an exclusivity provision to their respective worker's compensation acts. Both states have an exception to the exclusivity provision of the statute. The South Dakota exception is as follows, in pertinent part:

> The rights and remedies herein granted ... shall exclude all other rights and remedies of such employee, his personal representatives ... *except rights and remedies arising from intentional tort.* (emphasis supplied).

SDCL 62-3-2. The Iowa Worker's Compensation Act provides as follows in pertinent part:

> The rights and remedies provided in this chapter, ... shall be the exclusive and only rights and remedies of such employee, the employee's personal or legal representatives ... against (2) any other employee of such employer, *provided that such injury ... is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.* (emphasis supplied).

Iowa Code § 85.20 (1991). The two statutes set up a different standard of fault. In Iowa, gross negligence is the standard.[2]

In South Dakota, intentional conduct by the employee is the standard to trigger the exception to the exclusivity provision.[3]

In *VerBouwens v. Hamm Wood Products,* 334 N.W.2d 874, 876 (S.D.1983), this Court had the occasion to compare these standards. In *VerBouwens,* we stated:

> Willful and *wanton misconduct* is something more than ordinary negligence but less than deliberate or intentional conduct. Conduct is *gross,* willful, *wanton,* or reckless when a person acts or fails to act, with a conscious realization that injury is a *probable,* as distinguished from a *possible* (ordinary negligence) result of such conduct. Contra-distinguished, *intentional tortious conduct* is when an ordinary, reasonable, prudent, person would believe an injury was *substantially certain* to result from his conduct. To establish intentional conduct, *more than the knowledge and appreciation of risk is necessary;* the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence), and become a *substantial certainty.* (citations omitted) (emphasis supplied).

*VerBouwens, supra* at 876.

The purpose behind the South Dakota Worker's Compensation Act is two-fold. First, the worker's compensation provision is to provide an injured employee a remedy which is both expeditious and independent of proof of fault. *Scissons v. City of Rapid City,* 251 N.W.2d 681, 686 (S.D. 1977). Secondly, the legislation is to provide employers and co-employees a liability

---

**2.** Iowa Code § 85.20 (1991). Rights of employee exclusive.

> The rights and remedies provided in this chapter, chapter 85A or chapter 85B for an employee on account of injury, ... shall be the exclusive and only rights and remedies of such employee, the employee's personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury ... against,
> 1. the employee's employer; or
> 2. any other employee of such employer, provided that such injury ... arises out of and in the course of such employment and is not caused by the other employee's gross negligence amounting to such lack of care as to

amount to wanton neglect for the safety of another.

**3.** SDCL 62-3-2 provides:

> The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer *or any employee,* partner, officer, or director of such employer, *except rights and remedies arising from intentional tort.*

which is *limited and determinate. Id.* at 686. To this end, the legislation employs the highest standard of liability possible. The majority rule [4] in this country, construing the intentional tort exception narrowly, is the law in South Dakota. *Jensen v. Sport Bowl, Inc.,* 469 N.W.2d 370, 372 (S.D.1991). In South Dakota, intent pointedly means intent. *Id.* at 371.

It is apparent that Iowa's worker's compensation legislation does not share the same purpose. From the comparison employed in *VerBouwens,* it is evident that Iowa's standard of liability is less than in South Dakota. An intentional tort action in Iowa, alleging gross negligence by a co-employee amounting to such lack of care as to amount to wanton neglect for the safety of another, would not be within the South Dakota exception. Iowa only requires gross or wanton negligent conduct on the part of the co-employee. As we pointed out in *VerBouwens,* this standard only requires that a person acts or fails to act "with a conscious realization that injury is probable." (i.e. likely). *VerBouwens, supra* at 876. In contrast, establishment of intentional conduct requires more than just knowledge and appreciation of risk: "the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid, and become a *substantial certainty.*" *Id.* at 876. As we stated in *Jensen, supra,* 469 N.W.2d at 372, "[S]ubstantial certainty should not be equated with substantial likelihood." (i.e. probable) (citations omitted).

Moreover, the protection of the parties' justified expectations would mandate application of South Dakota law. All of the plaintiffs were employees based in South Dakota, besides residing here. Two of the defendants were also employed and based in South Dakota. We must assume that plaintiffs and their employers considered them covered under South Dakota worker's compensation laws. While there are exceptions to this coverage, certainly the parties believed that South Dakota worker's compensation law would apply to their employment conduct.

Thus, we must conclude from our analysis of the most significant relationship test that South Dakota law must apply. Therefore, the South Dakota worker's compensation provisions dictate the determination of this dispute. Plaintiffs received benefits from Williams Pipe Line under the Iowa worker's compensation program. Williams Pipe Line paid worker's compensation benefits under the Iowa statute and filed a lien against the proceeds of any recovery here.

II. *Did the trial court err in entering an order for summary judgment?*

As set forth in *Ruple v. Weinaug,* 328 N.W.2d 857 (S.D.1983), the standard of review for summary judgment is drawn from SDCL 15–6–56 and *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968). Courts in South Dakota may grant summary judgment when, viewing the evidence in the light most favorable to the nonmoving party, the moving party clearly shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. However, a prediction that the nonmoving party will not prevail on a material issue of fact is not a sufficient basis for granting summary judgment and it is generally not appropriate where "the standard of the reasonable person must be applied to conflicting testimony." *Wilson v. Great N. Ry. Co.,* 83 S.D. at 212, 213, 157 N.W.2d at 21, 22.

It must be noted that this Court has heard appeals from summary judgment orders in negligence actions in the past. *Jensen, supra; VerBouwens, supra.* We have examined the record herein to determine if a genuine issue of material fact has been raised, and we believe that none has been raised in either of plaintiffs' counts.[5] Viewing the evidence and the pleadings in a light most favorable to plaintiffs' case, we conclude that plaintiffs have not alleged

---

**4.** 2A Larson, The Law of Workmen's Compensation § 68.13, 68.15 (1990).

**5.** Count I stated a cause of action under Iowa law. Count II states a cause of action under South Dakota law, based on SDCL 62–3–2, the intentional tort exception.

facts that "plausibly demonstrate an *actual intent* by the employer to injure or a *substantial certainty that injury will be the inevitable outcome of employers conduct.*" *Jensen, supra* at 372. (citations omitted). Essentially, Plaintiffs allege that the defendants sent the crew to clean the tank without proper equipment for the job; without sufficient training and instruction as to cleaning, operation of equipment and safety; and allowing potentially unsafe conditions to be present. These allegations *may* amount to knowledge of a probable risk of injury to plaintiffs on defendants' part. However, these facts do not come within South Dakota's intentional tort exception to worker's compensation coverage as a matter of law. We are unable to say that defendants were substantially certain that plaintiffs' injuries would be the inevitable outcome of defendants' conduct, much less to say that defendants *actually intended* plaintiffs' injuries. Accordingly, we hold summary judgment was properly awarded to defendants. While trial court utilized the old choice of law approach, the grant of summary judgment was proper because even under the new choice of law approach, South Dakota law still applies. This is based upon application of South Dakota worker's compensation law determined by the newly adopted choice of law approach espoused in *Chambers v. Dakotah Charter*, 488 N.W.2d 63.

Affirmed.

MILLER, C.J., and WUEST, J., concur.

SABERS and AMUNDSON, JJ., dissent.

SABERS, Justice (dissenting).

I agree that this case is controlled by the recent South Dakota case of *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63 (S.D.1992), which adopted the most significant relationship test for cases involving conflict or choice of law questions. The most significant relationship test is applied in the first instance by the trial court. Since the trial court did not have the benefit of our decision in *Chambers*, I would reverse and remand to provide the trial court the opportunity to apply the proper test under the circumstances of this case.

Whether the application of the most significant relationship test would indicate the preferred law as Iowa or South Dakota remains for the trial court. *See generally Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63 (S.D.1992).

AMUNDSON, Justice (dissenting).

This is a case where the issue is whether or not co-employee's suit is allowable under the applicable worker's compensation law and not whether it is allowable under choice of law principles of tort law. In such a case, we must determine which jurisdiction (Iowa or South Dakota) has a greater interest at stake. *Hauch v. Conner*, 453 A.2d 1207 (Md.1983).

This explosion occurred in Iowa while plaintiffs were in the employ of a multi-state employer providing worker's compensation in both Iowa and South Dakota, as well as in other jurisdictions. The employees or their heirs received benefits under the worker's compensation program in effect at the time in Iowa. Both South Dakota and Iowa provide for an exception to the exclusivity provision of their respective acts. Under these exceptions, plaintiffs remain in court under the Iowa gross negligence standard, but are out of court under the South Dakota intentional tort standard.

The most significant relationship approach of *Chambers v. Dakotah Charter*, 488 N.W.2d 63 (S.D.1992), certainly should not foreclose plaintiffs from their day in court. This case, as previously stated, involves employees of a multi-state employer, employees whose employment required them to cross state lines in fulfilling their work duties, and employees who obviously were assigned to dangerous work environments. The employer was not incorporated in South Dakota. At the time of the occurrence, the employment relationship between employees and employer was centered in Milford, Iowa.

Since South Dakota and Iowa have similar exceptions to exclusivity of their respective worker's compensation statute, I do not perceive any conflict to the public policy of South Dakota, since this state has

acknowledged an exception to the exclusivity of worker's compensation in an appropriate case. The prior decisions of this court in *Owen v. Owen*, 444 N.W.2d 710 (S.D. 1989) and *Heidemann v. Rohl*, 86 S.D. 250, 194 N.W.2d 164 (1972), seem to indicate a preference to allow injured citizens of this state to prosecute legitimate claims. There has been an election in this case to apply Iowa law to the explosion as evidenced by the worker's compensation benefits being paid. Under the facts in this case, I would conclude that South Dakota's interest in having its worker's compensation statutes apply to an action involving South Dakota domiciliaries is outweighed by the interest of applying Iowa law to the industrial accident occurring within Iowa where Iowa worker's compensation statutes have been implemented. Although this court has not adopted Professor Leflar's choice-influencing consideration approach to choice of law disputes, I find the following portion of this article enlightening:

> "The inclination of any reasonable court will be to prefer rules of law which make good socio-economic sense for the time when the court speaks, whether they be its own or another state's rules."

R. Leflar, Conflicts Law: More on Choice–Influencing Considerations, 54 Cal.L.Rev. 1584, 1588 (1966).

The rule of law which this reasonable court should prefer in this case is that set forth in Iowa Code § 85.20 (1991). Whether the plaintiffs can prove gross negligence, a term which is not foreign to South Dakota jurists, is a question which will never be determined under the majority holding in this case. I would grant plaintiffs that opportunity to receive an answer and reverse the decision of the trial court on the choice of law issue.