**James SELLE, Plaintiff and Appellee,**

v.

**Harold G. PIERCE, Petitioner and Appellant.**

**No. 17850.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 1992.

Decided Jan. 13, 1993.

Rick Johnson, Stephanie E. Pochop of Johnson, Eklund & Abourezk, Gregory, for plaintiff and appellee.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, for petitioner and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

On January 30, 1990, Appellee James Selle (Selle) filed a defamation action against Appellant Harold G. Pierce (Pierce) in the Sixth Judicial Circuit, Gregory County, South Dakota. Both parties are residents of Nebraska. After some discovery, Pierce filed a motion seeking application of Nebraska law. Based on briefs and a hearing, the trial court, from an Order dated February 25, 1992, rejected Pierce's motion and held that South Dakota's substantive law would be applied.

This Court granted Pierce's Petition for Allowance of Intermediate Appeal by Order dated March 27, 1992. Petitioner seeks reversal of the trial court order and seeks an order directing that Nebraska substantive law be applied. On appeal, Pierce raises the following issue:

Did the trial court err in determining that South Dakota law should be applied in this multi-state defamation action?

Based on the facts of this case and our recent decisions in *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63 (S.D.1992), and *Brazones v. Prothe*, 489 N.W.2d 900 (S.D.1992), we reverse.

## FACTS

Selle, a Nebraska resident, was appointed to serve on the Boyd County Monitoring Committee, a committee established by Nebraska statute, to monitor plans to construct a low-level radioactive waste storage facility (facility) in his home county of Boyd County, Nebraska. Recognizing that leakage from the facility could have potentially dangerous effects on people living in neighboring Gregory County, South Dakota, Selle attended meetings there to discuss the facility.

Meanwhile, the committee retained Pierce, an area Nebraska resident, to compile and analyze data relating to the geological and geophysical activities at the proposed storage site. Later, Dr. Arden Davis of Rapid City, South Dakota, was retained to conduct a second geological survey at the facility site.

Citing difficulties in working with the committee and apparently upset with the committee seeking a second opinion from Dr. Davis, Pierce resigned his position on December 6, 1989. Two days later, he authored a letter which stated, in part, that Selle found it acceptable to "falsify data, issue false and misleading statements, trespass in order to gain 'evidence,' misquote, remove from context, in short, all things reprehensible and dishonest." Pierce mailed the letter to Dr. Davis in Rapid City and sent a copy of the letter to Dr. J.C. Marcum of Spencer, Nebraska, chair of the committee. Both the mailing and the writing apparently occurred in Nebraska.

Pierce has declined to retract statements made in the letter. Consequently, Selle filed a libel action in South Dakota alleging that he has been damaged in his capacity as both a business person and as a member of the committee. When the trial court ruled that South Dakota law applied, Pierce filed this appeal requesting that this Court reverse that ruling and direct the trial court to apply Nebraska substantive law.

## DECISION

When the lower court ruled that South Dakota law applied to these proceedings, multi-state choice of law questions were determined by the traditional *lex loci delicti* rule. However, three special concurrences in *Owen v. Owen*, 444 N.W.2d 710 (S.D.1989), indicated that this rule would be abandoned. In the case before us, the trial court had the foresight to analyze choice of law under several approaches, including the "most significant relationship" test which has been advanced by our recent decisions in *Chambers* and *Brazones*. Although the trial court held that the most significant relationship test indicates that South Dakota law should apply, the Findings of Fact and Conclusions of Law do not clearly indicate how the decision was reached.

In applying the most significant relationship test, courts are to consider the following:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Chambers* at 68; *Brazones* at 904; Restatement (Second) of Conflict of Laws § 145 (1971). The principles under § 6 are:

(1) A court, subject to the constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Chambers* at 68; *Brazones* at 904; Restatement (Second), *supra,* § 6 (1971).

After applying this approach, the lower court found that South Dakota had the most significant relationship to the occurrence and parties involved. Our standard of review is to uphold the trial court unless its findings are "clearly erroneous." A finding is "clearly erroneous" when after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake was made. *Permann v. S.D. Dep't. of Labor, Unemp. Ins. Div.,* 411 N.W.2d 113 (S.D.1987); *Vaughn v. Eggleston,* 334 N.W.2d 870 (S.D.1983). Upon review, we find that South Dakota did not have the most significant relationship and reverse.

In this case, a Nebraska resident mailed an allegedly defamatory letter about another Nebraska resident to a person in South Dakota and sent a copy of the letter to a person in Nebraska. Because the claimed defamation was published in two states, we turn to the Restatement (Second) for advice by reviewing the section specifically addressing multistate defamation and the most significant relationship test.

(1) The rights and liabilities that arise from defamatory matter in any ... aggregate communication are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) When a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state.

. . . . .

Restatement (Second), *supra,* § 150 (1971).

Selle, a registered voter in Nebraska, does not dispute that he is domiciled in Nebraska and admits that a copy of "the matter complained of" was sent to Dr. Marcum of Nebraska. As a practice of the secretary of the monitoring committee, a copy of the letter was distributed to the rest of the committee members, all residing in Nebraska. Thus, under § 150(2), Ne-

braska is the state of most significant relationship.

■ This alone does not mandate that Nebraska law should apply. The assumption that a plaintiff's domicile is also the place of his principal reputation should not be transformed into a rigid rule. *Palmisano v. News Syndicate Co.*, 130 F.Supp. 17 (S.D.N.Y.1955). Nevertheless, a closer review of the facts presented leads this Court to hold that Nebraska has all of the important contacts.

Selle was appointed by the State of Nebraska to serve on the Boyd County Monitoring Committee, an official group organized by the State of Nebraska to monitor the possible geological effects of the proposed low-level radioactive waste storage facility in Boyd County, Nebraska. Pierce, also a Nebraskan, was hired by the committee to compile and analyze geological and geophysical data from this proposed facility site. When Pierce resigned from the committee, Dr. Davis of South Dakota was chosen to replace him. Pierce wrote Davis concerning Selle's activities on the committee and also mailed a copy in Nebraska to Dr. Marcum, the head of the committee. This is the very writing which is at the heart of this case.

Selle asserts that his reputation in South Dakota—where he owns property and licensed vehicles, where, as the trial court concluded, he does his socializing and the majority of his day-to-day business—has been injured by the letter. In support, he cites *Fitzpatrick v. Milky Way Productions, Inc.*, 537 F.Supp. 165, 171 (E.D.Penn.1982), which held that the state of a plaintiff's domicile will generally be the place where most, if not all, of his reputational contacts are formed.

Despite Selle's claimed ties to South Dakota, we note that the relationship between Nebraska residents Selle and Pierce and their dispute are centered in Nebraska. Although at least five meetings concerning the facility were held in South Dakota, with South Dakota Governor George Mickelson attending two meetings, Selle attended those meetings as a member of a Nebraska committee. The allegedly defamatory writing concerned Selle's activities on the committee, not his business dealings in South Dakota. This is an important distinction. Throughout the complaint, the Findings of Fact and Conclusions of Law, and the briefs, the committee is the focal point of the issues. Even the alleged libelous statements concern Selle's activities on the committee. The record shows virtually no relationship between the acts complained of and the State of South Dakota. Certainly, public knowledge of these allegations could have an adverse effect on Selle's social and business life in South Dakota, but publication of the letter was limited to the committee—Pierce mailed the letter to only one person in South Dakota. The South Dakota resident received it only because of his status on the Nebraska committee.

Granted, Selle may have reputational ties to both states, but his credibility on the committee in Nebraska is the source of this issue. The State of Nebraska put this committee together to determine the feasibility of storing radioactive waste in Nebraska, particularly Boyd County. Allegations concerning the accuracy of research and reliability of a committee member undermine the confidence of the committee. Albeit turbulence in that committee could have a direct outcome on the people in the bordering Gregory County, South Dakota, Nebraska's interest in the outcome of this case greatly exceeds the interest of South Dakota.

Furthermore, the only apparent difference between the laws of the two states, as Selle concedes, is that punitive damages are forbidden in Nebraska, *Miller v. Kingsley*, 194 Neb. 123, 230 N.W.2d 472 (1975), but permitted in South Dakota under SDCL 21-3-2. Though Selle may desire to punish monetarily, there is no indication that South Dakota's law would be furthered by its use rather than the law of Nebraska. South Dakota, as do all states, has an interest in discouraging forum shopping. To allow Selle to use his business ties to this state as a way to punish Pierce, would be counterproductive to that end.

Finally, little significance can be attached to the ease of determining and applying

defamation laws or to the certainty, predictability and uniformity of result. The only notable difference between the applicable law in the two states is that South Dakota permits punitive damages.

## CONCLUSION

In summary, the claimed injury occurred in both South Dakota and Nebraska. The letter was written by a Nebraska resident and concerned a domicile of Nebraska who has ties to South Dakota. The letter centered on the relationship of the parties on the Nebraska committee. Thus, Nebraska is the situs of the subject matter of the Complaint.

Although South Dakota has some ties to this lawsuit, Nebraska has the most significant relationship to the alleged injury, the parties, and the circumstances surrounding the occurrence. Based upon application of the choice of law approach recently espoused in *Chambers, supra,* this Court holds that the trial court erred and that Nebraska's law on defamation should be applied to the facts of this case.

We reverse.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.