2000 SD 125

**Kathy FRYER, Plaintiff and Appellee,**

v.

**Clint KRANZ, Defendant and Appellant.**

**No. 20842.**

Supreme Court of South Dakota.

Argued Oct. 19, 1999.

Reassigned May 10, 2000.

Decided Sept. 6, 2000.

Rick Johnson, Stephanie E. Pochop of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, South Dakota, Attorneys for plaintiff and appellee.

William C. Garry, Michael A. Henderson of Cadwell, Sanford, Deibert & Garry, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

MILLER, Chief Justice (on reassignment).

[¶ 1.] In this intermediate appeal, because the employee has shown there is no genuine issue of material fact as to whether employer's conduct was intentional in order to except it from workers' compensation coverage, we hold that the circuit court improperly denied the employer's motion for summary judgment.

## FACTS

[¶ 2.] In 1996, Clint Kranz was remodeling a building in Watertown, South Dakota, to convert it into a casino. He employed workers, including Kathy Fryer, to help with the project. As part of the cleanup, he wanted to remove grout and other residue from the ceramic tile floors. Cleaning the tile proved difficult, so he purchased muriatic acid for the job. Muriatic acid, also called hydrochloric acid, is a strong, highly corrosive chemical. The product label warned that for proper use, the acid should be diluted, the vapors are harmful when the acid is used improperly, and the product is for exterior use only. These warnings were not readable when Fryer used the chemical because the label was covered with "cement stuff."

[¶ 3.] To show Fryer how to clean the tile, Kranz poured the undiluted muriatic acid on the floor, saying "This is how we use it." Kranz said he had used the product several times. He did not warn Fryer about any dangers, although he did say the acid is "corrosive and smells really bad," and "try not to breathe it." Fryer was told to wear protective gloves. Also, a small oscillating fan was positioned nearby to circulate the air, with more fans set up in the doorways to ventilate the building.

[¶ 4.] Over the course of three to four weeks, Fryer regularly cleaned with the acid. It produced a "green cloud" when poured on the floor. The vapor made her feel nauseated, lightheaded, and she coughed when she breathed it. She thought, nonetheless, that the fumes were no more toxic than those from products like fingernail polish remover or "whiteout." Yet she "complained a lot about it." She told Kranz, "It makes me feel weird. It makes me light-headed. I hate this shit." Kranz responded, "Well, when that happens, then you need to take a break

and you need to go get some air." He had her continue to use the product.

[¶ 5.] On November 12, 1996, Fryer used the muriatic acid to clean a very small room where there was no ventilation. The fumes overcame her. Lightheaded and nauseated, she could not continue. She ran across the alley to a bathroom in another building and vomited. When Kranz knocked on the door, Fryer assured him that she "was fine." She did not immediately seek medical attention, but as the day progressed, she suffered chest pains, breathing problems, and her skin "hurt real bad." Later in the day, she was admitted to the hospital where she remained for four days. She continues to suffer health problems.

[¶ 6.] Fryer brought a personal injury action against Kranz in circuit court, alleging:

> [Kranz] had experience with muriatic acid and was aware of its dangerous propensities, but nevertheless, intentionally directed [Fryer] to utilize the same in the small, unventilated area even after she had advised him that use of the product in larger ventilated areas had caused her dizziness, nausea and headaches.
>
> * * *
>
> [Kranz] intentionally caused the plaintiff to be exposed to the dangerous situation knowing that it was probable that serious injury would result.[1]

She sought damages for medical expenses, emotional distress, pain and suffering, and reduced earning capacity. Kranz moved for summary judgment. The court denied the motion, concluding that there were material issues of fact on whether Fryer committed an intentional tort. We granted intermediate appeal.

---

1. The allegation that serious injury "was probable" is insufficient by itself to take the matter out of workers' compensation coverage. But in summary judgment cases we examine the entire record before us, including all the pleadings, depositions, and affidavits. SDCL 15-6-56(c).

## STANDARD OF REVIEW

[¶ 7.] Our review of a trial court's granting of summary judgment is well settled. *See Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968); *Millard v. City of Sioux Falls*, 1999 SD 18, ¶ 8, 589 N.W.2d 217, 218; *Walther v. KPKA Meadowlands Ltd. Partnership*, 1998 SD 78, ¶ 14, 581 N.W.2d 527, 531; *Specialty Mills, Inc., v. Citizens State Bank*, 1997 SD 7, ¶ 7, 558 N.W.2d 617, 620.

> In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper.

*Kaiser v. North River Ins. Co.*, 2000 SD 15, ¶ 6, 605 N.W.2d 193, 195; *Schipke v. Grad*, 1997 SD 38, ¶ 5, 562 N.W.2d 109, 110; *Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, ¶ 6, 556 N.W.2d 68, 69; *Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 94 (S.D.1993).

## DECISION

[¶ 8.] Workers' compensation covers employment-related accidental injury of every nature. No matter what form employer conduct takes, be it careless, grossly negligent, reckless, or wanton, if it is not a "conscious and deliberate intent directed to the purpose of inflicting an injury," workers' compensation remains the exclusive remedy. 6 Larson's Workers' Compensation Law (MB) § 103.03 at 103-6 (November 1999). Even when an employer's acts entail "knowingly permitting a hazardous work condition to exist, knowingly ordering a claimant to perform an extremely dangerous job, [or] wilfully failing to furnish a safe place to work," still they come within the ambit of workers' compensation. *Id.* at 103-6 (November 1999) & 103-7 (May 2000).

[¶ 9.] In the workers' compensation scheme, exclusivity serves two important values: (1) it maintains "the balance of sacrifices between employer and employee in the substitution of no-fault liability for tort liability," and (2) it minimizes "litigation, even litigation of undoubted merit." Larson, *supra*, § 103.05[6] at 103-44 (May 2000). Exclusiveness imparts efficiency to the workers' compensation system. "Every presumption is on the side of avoiding superimposing the complexities and uncertainties of tort litigation on the compensation process." *Id.*

[¶ 10.] When an employer intends to commit injury, as opposed to negligently or recklessly committing it, then the rationale for embracing workers' compensation disappears. Accordingly, when an employer intentionally causes a work-related injury, workers' compensation law allows an exception to the exclusive remedies for employee work-related injuries:

> The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, officer or director of such employer, except rights and remedies arising from intentional tort.

SDCL 62-3-2.

[¶ 11.] Only injuries "intentionally inflicted by the employer" take the matter outside the exclusivity of workers' compensation coverage. *Harn v. Continental*

*Lumber Co.*, 506 N.W.2d 91, 95 (S.D.1993). "The worker must also allege facts that plausibly demonstrate an actual intent by the employer to injure or a substantial certainty that injury will be the inevitable outcome of employer's conduct." *Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370, 372 (S.D.1991) (citations omitted). Even when an "injury is a *probable* . . . result, [workers'] compensation is still the exclusive remedy." *Id.* (emphasis in original). The intentional tort exception is narrowly construed.[2] *Benson v. Goble*, 1999 SD 38, ¶ 19, 593 N.W.2d 402, 406 (citations omitted).

[¶ 12.] More than knowledge or appreciation of risk is required to establish intentional conduct. "The known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence) and become a substantial certainty." *Harn*, 506 N.W.2d at 95 (citing *Brazones v. Prothe*, 489 N.W.2d 900, 906 (S.D. 1992); *Jensen*, 469 N.W.2d at 372; *Ver-Bouwens v. Hamm Wood Prod.*, 334 N.W.2d 874, 876 (S.D.1983)).

[¶ 13.] The statement of our law regarding the substantial certainty standard was summarized in *Harn*:

The substantial certainty standard requires that the employer had actual knowledge of the dangerous condition and that the employer still required the employee to perform. Substantial certainty of injury to the employee should be equated with virtual certainty to be considered an intentional tort. . . . If an employee worked under such conditions where the employer actually knew of the danger and that injury was substantially certain (virtually certain) to occur, and such injury did occur, the employer should not escape civil liability for placing the employee in such a dangerous position. That is the type of conduct the intentional tort exception deters.

506 N.W.2d at 100.

[¶ 14.] Fryer asserts that Kranz knew she would be injured. When she complained to him about the fumes making her feel lightheaded, he replied: "Well, when that happens, then you need to take a break and you need to go get some air." Fryer stresses that Kranz used the word "when" rather than "if." To Fryer, it is notable that, although Kranz had joined Fryer in working with the acid before she complained, he sent her back to the small

2. Justice Konenkamp's dissent discusses a Larson example dealing with cyanide gas fumes. The example comes from the Michigan Supreme Court's discussion of an Illinois criminal case. *Beauchamp v. Dow Chemical Co.*, 427 Mich. 1, 398 N.W.2d 882 (1986). As Justice Konenkamp points out, the Illinois case is a manslaughter case (not a workers' compensation case). Larson also specifically notes the case did not "involve the meaning of 'intentional injury' in a compensation setting," which is the issue this Court faces in the present suit. Larson, *supra*, § 103.05[6] at 103–41. Putting these two points aside, the Michigan Supreme Court stated in its obiter dictum discussion of the facts of the Illinois case "[it] is questionable, however, whether even this outrageous conduct would constitute a 'true intentional tort.'" *Beauchamp*, 398 N.W.2d at 893. Although Larson and Justice Konenkamp believe the facts of the Illinois case would constitute intentional conduct by the employer, the facts before this court are much less egregious than the facts underlying the Illinois case. The Illinois de-

fendants never worked with the product they forced the workers to use, they hired workers who could not read English and therefore could not read the warning labels, their business of removing silver was a continually operating business, and they received a warning from an independent inspector "that the operation had outgrown the plant." *Id.* at 892–93. In contrast, Kranz did work with the product Fryer used, Kranz did not purposefully conceal the warning labels (although they were obscured inadvertently by "cement" according to Fryer), Kranz did not hire Fryer to continually work with the product all day every day, and Kranz received no warning from an independent inspector concerning any dangerous condition at his work location. Accordingly, this Court reverses the trial court's denial of summary judgment because Kranz did show that no genuine issue of material fact existed as to whether he intended to harm or knew with virtual certainty that harm would result from Fryer's working with muriatic acid.

room alone. This, she argues, shows that her adverse reaction was inevitable and that Kranz knew it. She claims Kranz knew because she had been harmed previously, though not as seriously, by the fumes when they made her light-headed and nauseated.

[¶ 15.] "The intentional tort exception to workmen's compensation is fact specific." *Harn*, 506 N.W.2d at 99. A comparison of the present facts to the factual bases of our prior cases is necessary to appreciate the allegations proffered by Fryer. Our cases thus far have described actions that do *not* constitute an intentional tort. This fact results from our narrow construction of the intentional tort exception. *Id.* at 95.

[¶ 16.] Most recently, in *Harn*, work was being done in an old sawmill because a new sawmill was having technical difficulties. During this work transfer, no one bothered to check whether the anti-kickback device was in place, and Harn was injured when a piece of lumber flew back out of the machine and struck him. There we held that disengaging the safety device may have made the injury probable or highly probable, but that was still not deemed to be substantially certain.

[¶ 17.] In *Brazones*, the plaintiffs alleged that "defendants sent the crew to clean the [petroleum] tank without proper equipment for the job; without sufficient training and instruction as to cleaning, operation of equipment and safety; and allowing potentially unsafe conditions to be present." 489 N.W.2d at 907. Although these allegations may have amounted to knowledge of a probable risk of injury to plaintiffs on defendants' part, we held them insufficient to show intent to injure.

[¶ 18.] In *Jensen*, the plaintiff was an "inexperienced, inadequately trained, 14–year–old boy ordered by his employer, without any warning of the danger, to perform a maintenance task which the employer knew from personal experience to be risky." 469 N.W.2d at 372. Even so, we did not deem the employer's actions to be intentionally tortious conduct.

[¶ 19.] Finally, in *VerBouwens*, the plaintiff was injured by a saw designed and constructed by his employer, which lacked proper safety equipment. 334 N.W.2d at 875. We hypothesized that the defendant may have known of a probable risk of injury from its saw design, yet we were unable to say that he was substantially certain injury would result.

[¶ 20.] Comparing the facts in prior cases to the instant action, Kranz's conduct was no more egregious than the other employers. His supervision of Fryer may have been negligent, reckless, or even wanton, but there is simply no showing that he intended to injure her.

[¶ 21.] Even when viewed in a light most favorable to Fryer, the evidence at most proves that Kranz knew the acid vapor irritated her. Fryer contends that muriatic acid, "when used in a small, unventilated space, . . . simply can *not* be used without causing illness." But this was the first time the acid had been used by Kranz or any of his employees in a small, unventilated space; she has not shown in any manner that Kranz knew her injuries were virtually certain to occur.

[¶ 22.] Based on Fryer's prior experiences with the acid, Kranz knew that it caused her to become light-headed and nauseous. However, that information alone does not automatically make it virtually certain that she would be overcome by the fumes on this occasion. Indeed, the fact that she suffered no severe adverse effects on prior occasions lends credence to Kranz's position that he was not certain it would cause injury.

[¶ 23.] Moreover, the notation that Kranz personally suffered ill effects from the acid supports the opposite idea that he did *not* know how injurious the fumes could be. Had he purposely intended to injure his employees by exposing them to the noxious fumes, it is simply not rational to believe that he would have also know-

ingly and deliberately exposed himself to the fumes by helping his employees clean the grout. Nor is it any more rational to assume that he knowingly and deliberately inflicted upon himself the medical claims, damages, time setbacks, and lawsuits that his employees' exposure to the acid would entail. Larson, *supra*, § 103.05[6] at 103–41 (May 2000).

[¶ 24.] Under these circumstances, perhaps Kranz should have known that the fumes *might* cause injury, or even that they would *probably* or *likely* cause injury. However, that level of knowledge was still insufficient to show intent to injure under our standard. *Harn*, 506 N.W.2d at 95; *Brazones*, 489 N.W.2d at 905; *Jensen*, 469 N.W.2d at 372; *VerBouwens*, 334 N.W.2d at 876. Kranz showed that no genuine issue of material fact existed as to his intent. To overcome Kranz's motion for summary judgment, Fryer needed to show that Kranz knew with *virtual certainty* that such exposure *would* cause illness, yet still required her to work. *Harn*, 506 N.W.2d at 100. This she failed to do.

[¶ 25.] As we stated in *Brazones:*

These allegations may amount to knowledge of a probable risk of injury to plaintiffs on defendants' part. However, these facts do not come within South Dakota's intentional tort exception to worker's compensation coverage as a matter of law. We are unable to say that defendants were substantially certain that plaintiffs' injuries would be the inevitable outcome of defendants' conduct, much less to say that defendants actually intended plaintiffs' injuries.

489 N.W.2d at 907. Given both Fryer's and Kranz's prior experience working with the acid with no more than irritating side effects, her being overwhelmed by the fumes was not a matter of *when* it would happen (a certainty), it was a question of *if* it would (a probability).

[¶ 26.] To decide this case differently would blur the line between cases involving only negligent or reckless conduct and those involving true intent to injure. In *VerBouwens*, Justice Wollman foresaw the dire results of such an outcome:

If the "intentional tort" exception was expanded as plaintiffs request, the focus would be upon the degree of risk of injury and the state of knowledge of the employer and the employee regarding the dangerous conduct or condition which caused the injury. This result undermines the balance of interests maintained by the worker's compensation system. First, it would thwart the goal of the system to provide employers relative immunity from liability at law. Second, it would deny many employees the swift and certain compensation they now receive under the system. The system originally required employees to surrender their right to a potentially larger recovery in a common law action for the wilful or reckless misconduct of employers, in return for expeditious recovery under worker's compensation. Employees disappointed with worker's compensation recovery would be encouraged to seek additional compensation in a common law action, increasing the role of the courts in resolving ... accident disputes.

334 N.W.2d at 877 (Wollman, J., concurring specially) (quoting *Shearer v. Homestake Mining Co.*, 557 F.Supp. 549, 555 (D.S.D.1983)). Moreover, with an artfully drafted complaint simply alleging that the employer intended to cause bodily harm or death, every employee would arguably be permitted to litigate his workers' compensation claim as an intentional tort. *See, e.g., Handley v. Unarco Indus., Inc.*, 124 Ill.App.3d 56, 79 Ill.Dec. 457, 463 N.E.2d 1011 (1984) (showing that plaintiffs withstood summary judgment by alleging that defendant intended bodily harm and/or death to plaintiffs, that defendant's conscious purpose was that asbestos would become trapped in their lungs and bodies).

[¶ 27.] Our warning in *Harn* bears repeating:

Without demanding and maintaining the strict standard, South Dakota would be following Ohio's slippery path. Ohio's substantially certain standard seems to allow actions to go forward which are ordinary negligence actions, i.e., injury is possible, and actions describing wanton or reckless conduct, i.e., injury is probable. That is exactly what workmen's compensation was designed to avoid. An employee should be allowed to recover from an employer if the employer hits the employee on the head with a board—that is an intentional tort. But "substantially certain" should not be allowed to be so watered down as to allow ordinary negligent conduct or reckless or wanton conduct on the employer's part to overcome the exclusivity of workmen's compensation. Every workmen's compensation case would then become a common-law action.

506 N.W.2d at 99–100. Given the legislature's considered, deliberate use of the word "intentional" in SDCL 62-3-2, we are hesitant to expand upon the accepted, traditional meaning of that word. *VerBouwens,* 334 N.W.2d at 877 (Wollman, J., concurring specially). Intent really means intent. *Jensen,* 469 N.W.2d at 371; *Brazones,* 489 N.W.2d at 906; *Harn,* 506 N.W.2d at 95.

[¶ 28.] Although *Kranz's* conduct was clearly negligent, probably reckless and possibly wanton, it does not amount to an intentional act. Therefore, the denial of Kranz's motion for summary judgment is reversed, and the case is remanded with directions that the trial court enter summary judgment in his favor.

[¶ 29.] AMUNDSON and GILBERTSON, Justices, concur.

[¶ 30.] SABERS and KONENKAMP, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 31.] The majority opinion confusingly refers to both "substantial certainty" and "virtual certainty" throughout its opinion.

"Virtual certainty" should not be used to increase the "substantial certainty" test. The majority opinion confusingly leaves the bench and bar to wrestle with any possible implications and reaches the wrong decision by use of such test.

[¶ 32.] The majority opinion quotes from *Harn v. Continental Lumber Co.,* 506 N.W.2d 91 (S.D.1993) throughout for support of its "virtual certainty" test. Without citing to any authority, the *Harn* court stated:

> Substantial certainty of injury to the employee should be equated with virtual certainty to be considered an intentional tort. Any less of a showing would render our workmen's compensation scheme a hollow shell and would encourage endless litigation in the courts. If an employee worked under such conditions where the employer actually knew of the danger and that injury was substantially certain (virtually certain) to occur, and such injury did occur, the employer should not escape civil liability for placing the employee in such a dangerous position.

*Id.* at 100. Up to that point, "virtual certainty" was never associated with the "substantial certainty" test. Only two members of the current court participated in that case and I restate my special concurrence therein:

> In my view, the test from [*Jensen v. Sport Bowl, Inc.,* 469 N.W.2d 370, 372 (S.D.1991)] is solid and workable and should not be altered. 'The worker must ... demonstrate an actual intent by the employer to injure or a substantial certainty that injury will be the inevitable outcome of employer's conduct.' *Jensen,* 469 N.W.2d at 372 (citations omitted). Just as 'substantial certainty should not be equated with substantial likelihood,' *id* (citation omitted), neither should it be altered to mean 'virtually certain.'

*Id.* at 100 (Sabers, J., concurring specially).

[¶ 33.] The Florida Supreme Court recognizes that there is a distinction between "substantial certainty" and "virtual certainty:"

We recognize that some courts have elevated the standard employees must prove from 'substantial certainty' to 'virtual certainty.' Although we continue to find that 'substantial certainty' requires a showing greater than 'gross negligence,' we emphasize that the appropriate standard is 'substantial certainty,' not the heightened 'virtual certainty' standard.

*Turner v. PCR, Inc.*, 754 So.2d 683, 687 n.4 (Fla. 2000) (internal citations omitted). Therefore, the *Turner* court receded from any previous language which "suggest[ed] [that] the 'substantial certainty' test requires a showing of 'virtual certainty.'" *Id.* We should do the same and return to the "substantial certainty" test.

[¶ 34.] Under our settled case law of *Wilson*, 157 N.W.2d at 21, and *Thiewes*, 448 N.W.2d at 3, the burden is on the moving party to show that there is no genuine issue of material fact. Here, the moving party is Krantz and he failed to meet his burden. In addition, it is obvious here that even under the incorrect "virtual certainty" test, reasonable minds differ. Therefore, the question is for the jury, not the trial court nor this Court.

[¶ 35.] For these reasons and the reasons expressed in Justice Konenkamp's dissent, I dissent.

KONENKAMP, Justice (dissenting).

[¶ 36.] This is a close case, admittedly, but close cases are decided in trials, not in chambers. Well advised is the precept that summary judgment cannot replace a trial. Yet with phrases like "it is simply not rational to believe," and the evidence "lends credence of [the employer's] position," the Court renders findings as if it were a jury. If we are to adhere to the strictures of summary judgment, however, this case should go to trial. Allow a jury to decide the employer's intent when he knowingly exposed his employee to toxic acid fumes in an unventilated room and then claimed the resulting injury was an accident.

[¶ 37.] The employee's complaint alleged an intentional tort, taking the matter outside the purview of workers' compensation. The circuit court properly denied summary judgment because a genuine issue of fact remains on whether the employer intended his employee to suffer exposure to acid fumes, by ordering her to work with the acid in a small, unventilated space knowing that adverse consequences were substantially certain to occur. Summary judgment is proper only when a court can conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c).

[¶ 38.] If an employer-caused injury is intentional, workers' compensation allows an exception to the exclusive remedies for employee work-related injuries:

The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, officer or director of such employer, except rights and remedies arising from intentional tort.

SDCL 62–3–2. Intentional torts occur when employers desire to cause the consequences of their acts, or they believe that the consequences are substantially certain to result from them. *See* Black's Law Dictionary 810 (6th Ed. 1991) (defining intentionally); Restatement (Third) of Torts § 1 (1999) (defining intentional). *See also Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370, 372 (S.D.1991) (citations omitted) (intent to injure denotes "a substantial certainty that injury will be the inevitable outcome of the employer's conduct.")

[¶ 39.] The term "virtual certainty," used repeatedly in the majority writing, somehow crept into our precedent, but its lineage is obscure. *See Harn v. Continental Lumber Co.*, 506 N.W.2d 91, 100 (S.D.1993) (first and last time the term used until now). In human behavior few things are "virtually certain" to follow any particular deed. The intentional tort exception should be narrowly construed, of course, but not to the extent of requiring proof that employers must foresee with "virtual certainty" the results of their deliberate acts. *Benson v. Goble*, 1999 SD 38, ¶ 19, 593 N.W.2d 402, 406 (citations omitted) (narrow construction required). Substantial certainty is the appropriate standard. (*Brazones v. Prothe*, 489 N.W.2d 900, 906 (S.D.1992); *Jensen*, 469 N.W.2d at 372; *VerBouwens v. Hamm Wood Prod.*, 334 N.W.2d 874, 876 (S.D.1983)). *See also Harn*, 506 N.W.2d at 100 (Sabers, J., concurring) (citations omitted).

[¶ 40.] To commit an intentional act taking the matter out of the domain of workers' compensation, employers must intend not only the injurious act, but the injury as well. 6 Larson's Workers' Compensation Law § 103.05[6], at 103–44 to –45. How can we know that injury was intended? If probability rises to the extent that employers know injury is certain or substantially certain to occur, but in willful disregard of that knowledge they still require their employees to perform, employers are deemed by law to have intended the result.

[¶ 41.] Kranz himself selected the acid with its warning label stating that it is "for exterior use only," that it must be diluted, and that the vapors are harmful when used improperly. In directing his employee how to use it he disregarded each of those warnings, and then gave an impossible command: "Try not to breathe it." When Fryer complained to Kranz about the fumes making her feel lightheaded, he replied: "Well, when that happens, then you need to take a break and you need to go get some air." Kranz used the word "when" rather than "if." He himself had suffered from exposure to the acid fumes. He told Fryer that he needed to "take a break" from the fumes to get some air. And although Kranz had joined Fryer in working with the acid before she complained, he sent her back to the small room alone. Certainly there is a genuine issue of fact whether Kranz knew with substantial certainty the adverse effects to come.

[¶ 42.] In *Brazones* the plaintiffs suffered burns after their employer sent them to clean a petroleum storage tank without proper equipment and without training on how to perform the job safely. *Brazones*, 489 N.W.2d at 903, 907. There, we wrote:

> These allegations *may* amount to knowledge of a probable risk of injury to plaintiffs on defendants' part. However, these facts do not come within South Dakota's intentional tort exception to [workers'] compensation coverage as a matter of law. We are unable to say that defendants were substantially certain that plaintiffs' injuries would be the inevitable outcome of defendants' conduct, much less to say that defendants *actually intended* plaintiffs' injuries.

*Id.* at 907. Before the mishap in *Brazones* took place, there was only a chance an injury could occur. It was perhaps a likely chance, but still just a chance.

[¶ 43.] Here, on the other hand, events went beyond chance. Before Fryer was hospitalized from her last exposure to the acid fumes, an earlier exposure occurred with adverse consequences that she told Kranz about. In her complaint, Fryer alleged that Kranz "had experience with muriatic acid and was aware of its dangerous propensities, but nevertheless, intentionally directed [Fryer] to use the same in the small, unventilated area even after she had advised him that use of the product in larger ventilated areas had caused her dizziness, nausea and headaches."

[¶ 44.] Professor Larson's treatise criticizes decisions eroding the intentional tort exception, but nonetheless concedes that in

this type of circumstance a true intentional tort can be shown. Using as an example a manslaughter case where the employer allowed workers to be exposed to cyanide gas, Larson points out that the employer knew about the danger because the labels on the chemical containers had warnings. Moreover, the workers complained daily about the fumes. One worker eventually died and others were injured. The corporate officers were found guilty of involuntary manslaughter. In contrasting this case with others where only a high probability of injury could be shown, Larson explains that the fumes were "continuously operative, and the employer knew it." Larson, *supra*, § 103.05[6], at 103–41, 103–42. In other cases, injury might or might not occur, depending on several variables. But in Larson's example,

> exposure to fumes *did* in fact occur. The only possible "unknown" might have been the effect of inhaling the fumes, but this unknown was removed by the plain warning on the package. The hiring of only workers who could not read warning labels confirms that the employer wanted those employees to continue to inhale these and suffer these known consequences. A court could well say that this amounted to intending the injury.

*Id.* at 103–42. (emphasis in original). Likewise, Kranz knew that Fryer had earlier suffered adverse effects from the fumes, knew that he himself had reacted to them, knew from the warning label that the acid should not be used as he was ordering his employee to use it, and knew that by following his direction Fryer would be exposed to concentrated fumes in the small space he ordered her to clean. *See Cunningham v. Anchor Hocking Corp.*, 558 So.2d 93 (Fla.Dist.Ct.App.1990) (employer knowingly exposed workers to toxic fumes).

[¶ 45.] Contrast Larson's hypothetical with what happened in *Schefsky v. Evening News Ass'n*, 169 Mich.App. 223, 425 N.W.2d 768 (Mich.App.1988). There, the employee claimed to have developed chemical asthma from using and inhaling solvents while cleaning printing presses. *Id.* at 769. In denying his tort claim, the court reasoned that the employee did not assert that the employer had "actual knowledge that an injury, such as chemical asthma or any other serious or permanent respiratory disease, was certain to occur following exposure to the solvents[.]" *Id.* at 771. In fact, the employee conceded that the "[d]efendant [employer] may not have specifically intended plaintiff's illness." *Id.* That the worker might suffer any adverse consequences from the solvents remained unknown to both employer and employee.

[¶ 46.] Suppose in *Harn* that before any injury, the employer earlier witnessed the employee nearly being struck by a flying chunk of wood because a safety guard was not in place. And suppose, like Kranz, the employer responded, "Well, when that happens, you need to take a break." Would there still have been no intentional tort? Or, suppose in *Brazones* the employees had complained about flare-ups in the storage tank they were cleaning, and the employer said, "Well, when that happens you need to get some air," or "try not to get burned." Even with these added facts we might well have ruled that because a flying chunk of wood or a flare-up are matters of chance, unpredictable, they would still not place the employer within the exception. But here, as in Larson's example, the exposure and adverse effects were "continuously operative."

[¶ 47.] While Fryer does not suggest that Kranz spitefully tried to hurt her, she does assert that Kranz knew injury was substantially certain to occur from exposure to acidic vapors. We must never forget that we view not only the facts favorably to the nonmoving party, but also the reasonable inferences from those facts. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19, 22 (1968) (citations omitted). In this light, Kranz's familiarity with this toxic chemical, his knowledge that it

was causing Fryer problems, and his direction that she continue working in the same fashion in an even more confined area, all tend to show knowledge that his conduct was substantially certain to result in injury. *See Brazones,* 489 N.W.2d at 907 (citations omitted). It was impossible to use the product without adverse effects under the conditions that Fryer was instructed to use it, undiluted and in a small, unventilated room where the fumes would concentrate. *See Kielwein v. Gulf Nuclear, Inc.,* 783 S.W.2d 746, 748 (Tex.App. 1990) (unprotected worker sent to clean up radioactive isotope spill).

[¶ 48.] In situations where dangerous equipment or conditions create only the probability of injury, harm may yet remain a matter of chance. On the other hand, breathing concentrated acid fumes creates a hazard where an employee cannot be exposed without suffering adverse effects. Thus injury becomes no longer accidental in nature. *See* Larson, *supra,* § 103.05[6] at 03–45. In these circumstances, we are compelled to let the fact finder decide whether injury was so certain to result from the employer's conduct as to create an inference that it was intended. A genuine issue of material fact exists on whether Kranz acted with intent to injure.

[¶ 49.] The denial of summary judgment should be affirmed.