**Christopher SCISSONS, Claimant and Respondent,**

v.

**CITY OF RAPID CITY and/or Pennington County, Employers and Appellants,**

**and**

**United States Fidelity and Guaranty Company, and/or North River Insurance Co., Insurer and Appellant, Insurer.**

**No. 11727.**

Supreme Court of South Dakota.

Argued April 26, 1976.

Reassigned Jan. 6, 1977.

Decided March 17, 1977.

Autine Hansen and Michael A. Wolff of Black Hills Legal Services, Inc., Rapid City, for claimant and respondent.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, Dennis H. Hill of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for employers, insurer and appellants.

MORGAN, Justice (on reassignment).

This case comes to us as an appeal by Pennington County and its workmen's compensation carrier (county) from a judgment of the Circuit Court of the Seventh Judicial Circuit for Pennington County, South Dakota, which judgment reversed the Denial of Award of workmen's compensation by the Director of the Department of Manpower Affairs, Division of Labor and Management Relations (Director), on a compensation claim filed by Christopher Scissons (claimant) and arising out of injuries sustained while the claimant was working on a garbage truck owned by the City of Rapid City under a county program of work relief for poor relief applicants who, (1) said they couldn't find a job, and (2) were able-bodied. Under the program claimant was compensated by the county in the form of

vouchers at the rate of $1.60 per hour, which vouchers were redeemable for necessaries at various stores in and about the community.

The director, in entering his denial of the award, entered findings of fact and conclusions of law in which he made the following conclusion:

II

"That the claimant had no express or implied contract of employment with either the City of Rapid City or the County of Pennington at the time of the accidental injury of March 15, 1974, and, therefore, claimant is not entitled to an award under the Workmen's Compensation Act against either the City of Rapid City nor the County of Pennington."

Claimant asked for and received a rehearing but the decision reaffirmed the denial on the basis of lack of contract, express or implied.

The circuit court in considering the record on the appeal found that:

"(3) The said director's decision is erroneous as a matter of law in that:

(a) At the time of the injury, and for some time prior thereto, appellant—claimant worked through the Pennington County poor relief program on a garbage route operated by the City of Rapid City, Pennington County, South Dakota, and payment to him was made in the form of food vouchers in the amount of the state's minimum wage times the number of hours worked; and

(b) The said director's decision fails to take into consideration that 'poor relief recipients' were treated differently—economically—depending upon whether they worked or did not work.

(c) The work of a worker under the poor relief program in Pennington County was compensated as follows: If a worker worked for the amount of relief given to him, he was compensated for such work and no 'poor lien' was filed pursuant to SDCL Chapter 28–14

and thus he was not obligated to repay the amount given to him; on the other hand, if a recipient of poor relief did not work, a 'poor lien' was (and is) filed pursuant to statute; and therefore

(d) The agreement for work in exchange for compensation and not filing a lien is, in effect, in law, a contract for employment between the recipient of poor relief and in this case, Pennington County, South Dakota; and accordingly the claimant—appellant is an 'employee' within the meaning of SDCL 62–1–3."

Based on these findings the trial judge entered his judgment reversing the decision of the director and remanding the matter to him for his edification, implementation and compliance, including the awarding of workmen's compensation benefits to the claimant. From that judgment this appeal arises.

We are not here concerned with the liability of the city because the claimant dropped his original claim against the city and its compensation carrier. The director's denial of award and the appeal to the circuit court was solely upon the question of the liability of the county. If the claimant was an employee he was a loaned employee to the city at the time of the injury for which compensation is claimed.

We find no precedent in any previous decision of this court because the fact situation before us in clearly distinguishable. The bulk of the cases reported from all jurisdictions arose in the depression days of the thirties and involved the relationship between a municipal corporation or county and a "relief worker" under one of the federal projects.

▇▇▇▇ That the county can be an employer under the provisions of our Worker's Compensation Statutes [1] is not questioned. The sole question is whether the claimant, a "poor relief worker," can be an employee. The statutes make no specific reference to such workers so we must determine whether the statutory scheme of workers compen-

---

1. SDCL 62–1–2.

sation include or exclude them. As Justice Wilkin observed in *Industrial Commissioner v. McWhorter*,[2] "the question is not answered by technical legal principles. The problem raises hairline distinctions, and cannot be solved by an arbitrary interpretation of words and phrases. It must be considered in the light of the public policy which prompted the legislation involved."

■ The facts are virtually undisputed and that there were the indicia of an express or implied contract of employment is clear. The claimant applied for work, the county hired him at an agreed hourly wage and assigned him to the city for supervision and control in the duties assigned. If he worked he got paid. If he didn't work he wouldn't get paid. The fact that the rates set was the state minimum is unimportant as is the fact that instead of cash he received county vouchers redeemable only for necessaries. Presumably if the county authorities desired they could terminate the work program with the claimant or with all similarly employed at any time. They could and in fact did later move him from one type of work to another.

In so holding we apparently disagree with the director's conclusion of law, supra; however, from the memorandum decision which is a part of the settled record it is obvious that this conclusion was based solely upon the application by the Director of the rule of law that a contract of employment cannot exist where the county is obligated to support the claimant whether he is able to work or not.

The director in his memorandum decision cited Larson on Workmen's Compensation at section 47.32 which deals with the employment status of "relief workers." The text states that the majority of cases denied compensation for such workers, usually on the theory that the money paid them was paid not as an obligation to pay wages under a contract of hire but as relief extended under a statutory duty to care for the poor, to which process the rendering of services was only incidental. In support of this position the author footnoted the case of *Bergstresser v. City of Willow Lake*.[3]

While the court in *Bergstresser* held that the existence of the relationship of employer and employee is essential to recovery under the Workmen's Compensation Law and that this relationship is contractual and must be created in every instance by a contract either express or implied, the precise question decided by the court was that the decedent at the time he was fatally injured was working under an assignment of *relief agencies* (emphasis supplied) and not under a contract, either express or implied, with the city.

■ While the findings of fact of the Director stand on substantially the same plane as a jury verdict would not be overturned on appeal unless unreasonable;[4] this court on review is the judge of whether the law has been correctly applied and whether the resultant conclusion of the Director is supported by competent and sufficient evidence.[5]

The sole question then becomes: Does the statutory requirement that the county relieve and support all poor and indigent persons, resident therein, vitiate the contract of employment by destroying the voluntary character of the county's participation? To answer this question we look not to the words and phrases of the statutes but to the public policy behind them. The poor relief laws we have had since statehood, the workmen's compensation statutes, are of more recent origin.

■ The poor relief laws[6] recognize the duty of the sovereign to lend at least sub-

2. *Industrial Commissioner v. McWhorter*, 129 Ohio St. 40, 193 N.E. 620, 96 A.L.R. 1150 at 1152.

3. *Bergstresser v. City of Willow Lake*, 1935, 63 S.D. 386, 259 N.W. 276.

4. *Joffer v. Crusy's Power Brake & Supply, Inc.*, 1968, 83 S.D. 191, 156 N.W.2d 189.

5. *Demaray v. Mannerud Construction Co.*, 1964, 80 S.D. 554, 128 N.W.2d 551.

6. Chapter 28–13 SDCL.

sistence to the poor and indigent, the paupers. The scheme was basically a dole under the "oversite" of the county commissioners. Since 1933 the commissioners were authorized to require the applicant for aid to secure the approval of the governing body of the town or municipality where he resided and such governing body could, before giving such approval, require that the applicant perform labor or services of a public nature commensurate to the amount of subsistence granted.[7] The language of the statute made this discretionary, not mandatory. The 1976 Legislature amended the statute to eliminate the approval of the local governing bodies and simply granted the commissioners the authority to require labor or services. Again the phraseology was not mandatory but rather discretionary. It also specified that such person was not to replace a regular county employee[8] and mandated termination of assistance in the event of refusal to report to work without just cause.[9] Thus we find that since the depression days of the thirties the legislature has recognized the desirability of requiring those who are able to, in effect, earn their keep. While the poor relief statutes do provide for reimbursement to the county from persons relieved "as a poor person" they make no exception for support, care and maintenance for which labor or services is performed commensurate to the amount of such aid granted.[10] Obviously, the county would not be entitled to reimbursement twice, therefore, it is implicit that the legislature recognize that there are two types of poor relief, that is, the dole and the work relief. To hold otherwise would apparently render the entire Pennington County program unlawful for failure to file liens and seek reimbursement for payments made.

As previously noted the Workmen's Compensation Laws are of more recent origin, first appearing in our statutes in 1917.

Workmen's compensation legislation is based upon the idea that the common law rule of liability for personal injuries incident to the operation of industrial enterprises, based as it is upon the negligence of the employer, with its defenses of contributory negligence, fellow servants' negligence, and assumption of risk, is inapplicable to modern conditions of employment. Under the compensation acts the theory of negligence as the basis of liability is discarded.

The general purposes of workmen's compensation legislation, therefore, is the substitution in place of the doubtful contest for a recovery based on proof of the employer's negligence and the absence of the common law defenses of a right for the employees to relief based on the fact of employment, practically automatic and certain, expeditious and independent of proof of fault and for the employers a liability which is limited and determinate. Workmen's Compensation Laws, as contrasted with the common law system, are generally considered and recognized as embodying more advanced ideas with respect to economics and sociology.[11]

We find nothing in the public policy behind workmen's compensation that in inimical to the right of a poor relief worker to be treated as any other general employee of the county. Indeed, the present statutes contemplate that such a worker will be so employed so much so that it was necessary to protect the nonrelief workers from displacement on their jobs. The fact that a county has to extend medical care to indigents does not mean that it is desirable to do so, nor that it should have to provide subsistence during convalescence. For these forms of relief the county is required to seek reimbursement so they can hardly be equated with benefits.

And what of the employer's liability absent workmen's compensation? Is the

---

**7.**   SDCL 28–13–20.

**8.**   SDCL 28–13–20.1.

**9.**   SDCL 28–13–20.2.

**10.**   Chapter 28–14 SDCL.

**11.**   81 Am.Jur.2d Workmen's Compensation, section 2, pp. 699–701 inclusive.

 

claimant then free to pursue his common law remedies? Workmen's compensation is a two-way street, granting to the employer some limitation of liability as well as benefits to the employee.

By statute the county is recognized as an employer and the term "employee" is extended to include governmental officials elected and appointed for a regular term, if the governing body so elects,[12] county highway superintendents, deputy sheriffs, constables, policemen and firemen,[13] and even certain volunteers, when the governing body so elects.[14] There is no sound reason for discriminating against a poor relief worker who may be injured while working shoulder to shoulder with a regular county employee who would be entitled to benefits or even a volunteer who might be.

In so holding, we affirm the findings of the circuit court and reject what has been denominated the majority rule and join a number of other jurisdictions which subscribe to the so-called "English Rule" which we find to be more enlightened and more adapted to present-day sociological concepts.

The director in his memorandum opinion stated a second basis for his ruling to be that it would appear that the county would not have the authority to insure itself for workmen's compensation benefits where relief workers are not engaged in services to the county under an express or implied contract of hire. This conclusion was not included in his formal findings of fact or conclusions of law, but since it was set out in his first memorandum opinion, we deal with it here. To support this position he cites the case of *South Dakota Employers Protective Association v. Poage*, 1937, 65 S.D. 198, 272 N.W. 806. This is one of the federal project cases and an examination of the case will reveal that it is not in any way controlling in this case which does not involve any federal relief agency.

We affirm the decision of the circuit court.

All the Justices concur.

WINANS, Retired Justice, sitting for PORTER, J., disqualified.

12. SDCL 62–1–3(2).

13. SDCL 62–1–4.

14. SDCL 62–1–5 and 62–1–5.1.