Daniel W. HARN, Plaintiff and Appellee,

v.

CONTINENTAL LUMBER COMPANY, Petitioner and Appellant.

No. 18030.

Supreme Court of South Dakota.

Considered on Briefs on April 20, 1993.

Decided Sept. 1, 1993.

Jeffrey P. Maks, Finch, Bettman, Maks, Rapid City, for plaintiff and appellee.

J.G. Shultz, Woods, Fuller, Shultz & Smith, Sioux Falls, for petitioner and appellant.

MILLER, Circuit Judge.

This Court granted Employer Continental Lumber's petition for allowance of an appeal from an intermediate order denying its motion for summary judgment against employee Daniel Harn (Harn). We reverse.

### FACTS

Harn was injured on April 22, 1989, while working as a general laborer for Continental Lumber. Harn's job at the time of his injury was to feed rough lumber onto a conveyor which then fed the wood into an edger.

Harn was to feed lumber into the "north edger" in the old saw mill. He was to flip and manipulate boards into the edger so the round side was up. A chain or conveyor apparatus transports rough pieces of lumber through an in-feed opening which is adjusted to saw and edge the boards to specific widths and sizes. The edger is operated with an electric control box or panel located one floor above the edger. Harn was located in front of the in-feed opening while foreman Danny Torres was operating the edger control box.

The edger contained an anti-kickback safety device or a set of safety fingers. As the saws within the edger rotated in an opposite direction to that of the conveyor feeding the lumber, the safety device prevented lumber from being kicked back through the in-feed opening. The anti-kickback device was operated by a lever on the side of the machine. When a board became stuck on the saw, the employee would walk to the side of the edger and operate a hydraulic switch to disengage the safety device or lift the safety fingers. As the fingers lifted, the control box operator would reverse the lumber back through the in-feed opening to repeat feeding the lumber into the edger. Typically, if there was an employee feeding lumber into the edger, it was his responsibility to disengage the anti-kickback device or lift the safety fingers.

In April of 1989, Continental Lumber was in the process of phasing in a new saw mill. Due to mechanical difficulties with the new

mill, work would be reverted to the old saw mill. As a result, the flow of lumber in the old saw mill fluctuated greatly. The edging process in the old saw mill transformed from a two-person job (one running the control box and one flipping boards) to that of one person running the control box only. The control box operator could dislodge jammed boards by reversing the flow. This could not be done with the anti-kickback device engaged. The anti-kickback device would be disengaged by propping up or jimmying the lever with a piece of wood. On the date of his injury, Harn had seen the edger operator dislodge jammed boards by reversing the flow, which Harn knew could not be accomplished with the anti-kickback device engaged. Apparently, disengaging the safety device kept lumber production up during the equipment switch in the mill.

On April 20, 1989, the new mill again experienced mechanical difficulties and edging was transferred to the old mill. Harn fed boards into the edger and his foreman operated the control box. While Harn was flipping lumber, one of the boards became stuck within the edger. The board caught on one of the saws and was thrown back through the in-feed opening, striking Harn on the cheek and forehead. He suffered a loss of nerve function to the right side of his face and disfigurement. It was later discovered that the anti-kickback device was disengaged at the time of Harn's injury.

On February 14, 1990, Harn filed a civil action, which was later amended, premised on the intentional tort exception to workmen's compensation. Harn alleges that Continental Lumber knowingly, deliberately, and intentionally disengaged the edger's anti-kickback safety device believing that injury to an employee was substantially certain to occur.

Continental Lumber moved for summary judgment on two alternative theories. Continental Lumber claims that Harn's action is barred by the exclusivity provisions of SDCL 62–3–2. Alternatively, Continental Lumber claims that the action is barred by an election of remedies due to Harn's acceptance of worker's compensation benefits. That issue has not been raised in this appeal. The trial court denied Continental Lumber's motion for summary judgment, holding that the record presented genuine issues of material fact. We disagree.

## STANDARD OF REVIEW

■■■ Our standard of review for a grant or denial of summary judgment is well settled. *Lamp v. First Nat. Bank of Garretson*, 496 N.W.2d 581 (S.D.1993). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c).

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper.

*Lamp, supra,* 496 N.W.2d at 583; *Waddell v. Dewey Cnty. Bank,* 471 N.W.2d 591 (S.D. 1991). Summary judgment is usually not appropriate in negligence actions because the standard of a reasonable person must be applied to conflicting testimony. If, however, the facts are undisputed, the issue becomes one of law for this Court to decide. *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493 (S.D.1990); *Gasper v. Freidel,* 450 N.W.2d 226 (S.D.1990). Thus, summary judgment is appropriate to dispose of legal, not factual questions. *Ramesbotham v. Farmers Elevator Co.,* 428 N.W.2d 542 (S.D.1988); *Hamaker v. Kenwel–Jackson Machine, Inc.,* 387 N.W.2d 515 (S.D.1986).

There is no dispute as to the material facts in this action. The question is, as a matter of law, whether Continental Lumber's conduct amounted to negligent conduct or whether such conduct amounted to an intentional tort thus limiting Harn to the exclusive remedies provided under the workmen's compensation scheme.

Our worker's compensation statutes feature an exclusivity of remedies provision in SDCL 62–3–2:

> The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, officer or director of such employer, except rights and remedies arising from intentional tort.

 Worker's compensation is the exclusive remedy for all on-the-job injuries to workers except those injuries intentionally inflicted by the employer. Under the intentional tort exception, workers may bring suit against their employers at common law only when an ordinary, reasonable, prudent person would believe an injury was substantially certain to result from the employer's conduct. *Brazones v. Prothe*, 489 N.W.2d 900 (S.D.1992); *Jensen v. Sport Bowl, Inc.*, 469 N.W.2d 370 (S.D.1991); *VerBouwens v. Hamm Wood Products*, 334 N.W.2d 874 (S.D.1983). The worker must allege facts that plausibly demonstrate an actual intent by the employer to injure or a substantial certainty that injury will be the inevitable outcome of the employer's conduct. *Jensen, supra*, at 372, *citing* 2A Larson, *The Law of Workmen's Compensation*, § 68.14 (1990).

 The purpose behind the South Dakota Worker's Compensation Act is twofold. First, the worker's compensation provision is to provide an injured employee a remedy which is both expeditious and independent of proof of fault. *Brazones v. Prothe, supra*, 489 N.W.2d at 905; *Scissons v. City of Rapid City*, 251 N.W.2d 681 (S.D.1977). Secondly, the legislation is to provide employers and co-employees a liability which is limited and

determinate. *Brazones, supra*, 489 N.W.2d at 906; *Scissons, supra*, 251 N.W.2d at 686. To this end, the legislation employs the highest standard of liability possible.

 Worker's compensation was designed by the legislature to be the exclusive method for compensating workers injured on the job in all but extraordinary circumstances. *Jensen, supra*, 469 N.W.2d at 371. This Court construes worker's compensation statutes liberally to provide coverage even when the worker would prefer to avoid it. *Goodman v. Sioux Steel Co.*, 475 N.W.2d 563 (S.D.1991); *Jensen, supra*, 469 N.W.2d at 371; *South Dakota Med. Service v. Minnesota Mut. Fire & Cas. Co.*, 303 N.W.2d 358 (S.D.1981).

An extraordinary circumstance where worker's compensation is not the exclusive remedy is where the employer intends to cause the injury suffered by the worker. However, it is "almost unanimous" among state and federal courts interpreting this exception that intent really means intent. *Jensen, supra*, 469 N.W.2d at 371, *citing* 2A Larson, § 68.13.

 The majority rule in this country, construing the intentional tort exception narrowly, is the law in South Dakota. *Brazones, supra*, 489 N.W.2d at 906; *Jensen, supra*, 469 N.W.2d at 372. In South Dakota, intent pointedly means intent. *Brazones, supra*, 489 N.W.2d at 906; *Jensen, supra*, 469 N.W.2d at 371. Even when employers act or fail to act "with a conscious realization that injury is a *probable* ... result," worker's compensation is still the exclusive remedy for workers thereby injured. *Jensen, supra*, 469 N.W.2d at 372; *VerBouwens, supra*, 334 N.W.2d at 876.

 To establish intentional conduct, more than the knowledge and appreciation of risk is necessary. The known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence) and become a substantial certainty. *Brazones, supra*, 489 N.W.2d at 906; *Jensen, supra*, 469 N.W.2d at 372; *VerBouwens, supra*, 334 N.W.2d at 876. Substantial certainty should

not be equated with substantial likelihood (i.e., probable). *Brazones, supra,* 489 N.W.2d at 906; *Jensen, supra,* 469 N.W.2d at 372, *citing Beauchamp v. Dow Chemical Co.,* 427 Mich. 1, 398 N.W.2d 882, 893 (1986).[1]

In *Brazones, supra,*[2] injured employees and estates of deceased employees brought tort actions arising out of a petroleum tank explosion which occurred while the plaintiffs were inside the tank cleaning it. The plaintiffs alleged that the employers sent the crew to clean the tank without proper equipment for the job or sufficient training and instruction as to cleaning, operation of equipment and safety, and by allowing potentially unsafe conditions to be present.

This Court compared South Dakota and Iowa's workmen's compensation legislation. Iowa's intentional tort exception to workmen's compensation requires gross or wanton neglect conduct. This standard only requires that a person act or fail to act with a conscious realization that injury is probable. In contrast, South Dakota requires more than just knowledge and appreciation of the risk: the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid, and become a substantial certainty. *Brazones, supra,* 489 N.W.2d at 906.

While Brazones' allegations *may* have amounted to knowledge of a probable risk of injury to plaintiffs on defendants' part, these facts do not come within South Dakota's intentional tort exception to worker's compensation coverage as a matter of law. The court was unable to say that defendants were substantially certain that plaintiffs' injuries would be the inevitable outcome of defendants' conduct, much less to say that defendants *actually intended* plaintiffs' injuries. *Brazones, supra,* 489 N.W.2d at 907.

In *Jensen, supra,* Jensen, a fourteen-year-old pin chaser at Sport Bowl lost his right index finger in the pinsetting machine when the rag he was using to wipe oil from the machine became entangled in a moving pulley. Jensen alleged that the employer's conduct came within the intentional tort exception to workmen's compensation exclusive remedy rule. Viewing the evidence and the pleadings in a light most favorable to Jensen's case, Jensen was an inexperienced, inadequately trained, fourteen-year-old boy ordered by his employer, without any warning of the danger, to perform a maintenance task which the employer knew from personal experience to be risky. Even so, these facts did not allege the elements necessary to an intentional tort cause of action. *Id.* 469 N.W.2d at 372. To establish intentional conduct, more than the knowledge and appreciation of risk is necessary; the known danger must become a substantial certainty. Substantial certainty should not be equated with substantial likelihood. *Id.*

In *VerBouwens, supra,* the employee was injured while using a saw designed and constructed by the employer for use in his saw mill. VerBouwens alleged that the employer's knowledge of the saw's dangerous condition was willful, wanton and reckless conduct which amounted to an intentional act.

The *VerBouwens* court distinguished willful and wanton conduct from intentional conduct. Willful and wanton misconduct is something more than ordinary negligence but less than deliberate or intentional conduct. Conduct is gross, willful, wanton, or reckless when a person acts or fails to act with a conscious realization that injury is a probable, as distinguished from a possible (ordinary negligence) result of such

1. In *Beauchamp,* the Michigan court adopted the "substantial certainty" standard. The Michigan legislature reacted to this by requiring that the employer have actual (not constructive) knowledge that injury was certain (not substantially certain) to occur and also that the question of whether an act was an intentional tort shall be a question of law for the court. *See,* 2A *Larson, supra,* § 68.15(e), pp. 13–110 to 13–111. The statute stiffened the standard for finding an intentional tort in that one must now show that there was either a deliberate act or actual knowledge that an injury was certain to occur. *O'Shea v. Detroit News,* 887 F.2d 683 (6th Cir.1989) (applying Michigan law).

2. *Brazones* involved a conflict of laws issue as the tank explosion occurred in Iowa, but the employees and several of the defendants were residents of South Dakota. Under the significant relationship analysis in multi-state tort actions, the majority held that South Dakota law would apply rather than Iowa law.

conduct. Intentional tortious conduct is when an ordinary, reasonable, prudent person would believe an injury was substantially certain to result from his conduct. To establish intentional conduct, more than the knowledge and appreciation of risk is necessary; the known danger must cease to become only a foreseeable risk which an ordinary, reasonable, prudent person would avoid (ordinary negligence) and become a substantial certainty. *VerBouwens, supra,* 334 N.W.2d at 876. The court held that the employer may have known of a probable risk of injury from its saw design, but on the record before the court it was unable to say the defendant was substantially certain that VerBouwens' injury would result. *Id.*

If these decisions seem rather strict, one must be reminded that what is being tested here is not the degree of gravity or depravity of the employer's conduct, but the narrow issue of intentional versus accidental quality of the precise event producing injury. The intentional removal of a safety device may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was an intentional infliction of harm comparable to a left jab to the chin. *See,* 2A *Larson, supra,* § 68.13, p. 13–71.

Ohio case law recognizes the same intent standard of "substantial certainty" to the intentional tort exception to worker's compensation that South Dakota does. In *Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984), three worker's compensation actions were consolidated for purposes of clarifying what constitutes an intentional tort.

In the first action (*Jones v. VIP Development*), the plaintiffs were working at a company-owned construction site, installing a sewer line. While they were guiding a manhole conduit being moved by a hydraulic excavator, the boom of the excavator came into contact with a high voltage electrical power line. The complaints alleged that the employer knew or should have known that employees would be on the premises for the purpose of pursing its business activity as a land developer and would be in close proximity to high voltage electric lines; however,

employer took no steps to inspect and make safe the premises, nor to warn of the dangers to be encountered from the high voltage distribution lines on the premises. *Jones, supra,* 472 N.E.2d at 1052. The court of appeals upheld summary judgment for the employer. Employee urged that "intentional" need not mean "with intent to injure."

In the second employee action (*Gains v. City of Painesville*), part of the decedent's job was to maintain the coal conveyor system. The discharge chute at the upper level of the conveyor was guarded with a sheet metal safety cover. The employer removed the safety cover with a blow torch. In an effort to loosen accumulated coal, employee reached into the chute and his hand became caught between a pulley and the sidewall of the chute. The pulley action drew his entire arm into the chute. He was found an hour later by a co-worker, his arm still trapped inside the chute. His death was the result of the severe injuries he received.

The court of appeals reversed the jury verdict for the employee and entered judgment for the employer, ruling that employee had failed to prove that employer's conduct was intentional. The court reasoned that an act, to be considered an intentional tort, must have as its purpose the intent to inflict injury. *Jones, supra,* 472 N.E.2d at 1048.

In the third action (*Hamlin et al. v. Snow Metal Products*), employees instituted an action against their former employer and two of its chemical suppliers alleging that they had been exposed to toxic chemicals while working for Snow and suffered serious physical injuries. Employees further alleged that employer knew of the harmful exposure, but misrepresented to them that the exposure was not dangerous to their health, or that the conditions had been corrected when in fact they had not. Employees complaints about poor air quality at the plant were ignored. As the air quality worsened and physical ailments increased, employer closed a portion of the ventilation system which had acid fumes leaking into it. Employer continued to assure employees of their safety.

The court of appeals reversed employees' jury verdict holding that they failed to dem-

onstrate that employer knowingly subjected them to recognized hazards for the purpose of injuring them. At most, the evidence showed negligence. Without the requisite element of intent to injure, the injury is exclusively compensable under the workmen's compensation system. *Jones, supra,* 472 N.E.2d at 1049.

■ The *Jones* court addressed whether conduct which lacks a specific intent to injure can properly be termed intentional. The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interest of another in a way the law forbids. *Id.* 472 N.E.2d at 1051, *citing* Prosser & Keeton, *Law of Torts,* § 8, p. 36 (5th ed. 1984).

■ Specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to other which is substantially certain, not merely likely to occur. It is this element of substantial certainty which distinguishes a merely negligent act from intentionally tortious conduct. Where a defendant acts despite his knowledge that the risk is appreciable, his conduct is negligent. Where the risk is great, his actions may be characterized as reckless or wanton, but not intentional. The actor must know or believe that harm is a substantially certain consequence of his act before intent to injure will be inferred. The existence of this knowledge or intent may be inferred from his conduct and surrounding circumstances. The Ohio Supreme Court rejected the proposition that a specific intent to injure is necessary to a finding of intentional misconduct. *Jones,* 472 N.E.2d at 1051. The *Jones* court reversed the court of appeals in all three actions.

The *Jones* decision and its progeny, consistently rejected the exclusiveness defense. In 1986, the Ohio legislature responded by amending its workmen's compensation laws and by defining "substantially certain" to mean that the employer acted with deliberate intent to cause an employee to suffer injury,

disease, condition of death. 2A *Larson, supra,* § 68.15(b), p. 13–88. However, in *Brady v. Safety–Kleen Corp.,* 61 Ohio St.3d 624, 576 N.E.2d 722 (1991), the court declared the 1986 amendments unconstitutional. While a worker could still seek redress for intentional tortious conduct occurring during the course of employment, the stricter legislative standard of "substantially certain" was out the window and the *Jones* definition of substantially certain was again the law in Ohio. *See,* 2A, *Larson, supra,* § 68.16(b).

In *Sanek v. Duracote Corp.,* 43 Ohio St.3d 169, 539 N.E.2d 1114 (1989)[3] an employee suffered a traumatic amputation of his hand when it became caught in an industrial mixing machine. He brought a tort action against the employer alleging an intentional tort. The trial court entered a judgment on a jury verdict in favor of the employee and the employer appealed. The Ohio Supreme Court reversed, holding that the plaintiff had not established the requisite level of intent on the employer's part.

■ To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligent. Where the risk is great, and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as reckless. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent. *Sanek, supra,* 539 N.E.2d at 1117, *citing Jones, supra.* The focus of an intentional tort action is on the knowledge of the employer regarding the risk of injury. The plaintiff has the burden of proving by a preponderance of the evidence that the em-

**3.** Sanek's injury occurred in 1981 and the complaint was filed in 1983, both prior to the 1986 amendments. This case is cited because it demonstrates the "substantial certainty" standard in Ohio.

ployer had "actual knowledge of the exact dangers which ultimately caused" injury. *Sanek, supra,* 539 N.E.2d at 1117; *Van Fossen v. Babcock & Wilcox Co.,* 36 Ohio St.3d 100, 522 N.E.2d 489 (1988).

> "[t]here are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However in view of the overall purposes of our [Ohio's] Worker's Compensation Act, such conduct should not be classified as an 'intentional tort' and therefore an exception, ... to the exclusivity of the Act."

*Sanek, supra,* 539 N.E.2d at 1117; *Van Fossen, supra,* 522 N.E.2d at 504–505.

Sanek's employer had never been cited or ordered by OSHA to provide a guard for the moving shaft of the mixer despite a number of OSHA inspections. No other employee had ever been injured while using the mixer when no commercial guard was available for the mixer. Employer had fabricated a shield, but still allowed a worker to use the mixer in the same manner as the injured employee. These facts did not rise to the level of risk exposure so egregious as to constitute an intentional wrong.

In *Ailiff v. Mar–Bal, Inc.,* 62 Ohio App.3d 232, 575 N.E.2d 228 (1990), employees brought an intentional tort action against the employer based on their exposure to methylene chloride. Plaintiffs alleged that employer exposed them to excessive amounts of methylene chloride despite a "substantial certainty" that an injury would result from this contact. There was evidence that employer knew of the dangers associated with this gas since employer had worked with the solvent since the 1950s; that employer removed the chemicals prior to any inspection by health or insurance officials; that employer did not follow safety regulations; and, that proper safety equipment was not provided to employees. The trial court granted a directed verdict for the employer since there was not substantial evidence which indicated that

the employer knew, to a substantial certainty, that such injuries would occur. *Ailiff, supra,* 575 N.E.2d at 232.

> "[I]n order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."

*Ailiff, supra,* 575 N.E.2d at 231–32, *citing Van Fossen v. Babcock & Wilcox Co., supra.*

Although the employee is not required to adduce evidence indicating that the employer directly intended that the employee be injured, the employee does have to prove that the employer had actual knowledge of the exact dangers which ultimately caused the injury. *Ailiff, supra,* 575 N.E.2d at 232. The appellate court reversed the employer's directed verdict. While there was no evidence that employer directly intended to poison its employees, there was evidence to show that employer knew that these injuries were substantially certain to occur from the procedures inherent in the plant and still continued to utilize these methods. The evidence raised a fact issue for the jury as to whether the employer acted with inferred intent to bring about the injuries. *Ailiff, supra,* 575 N.E.2d at 234.

■ The intentional tort exception to workmen's compensation is fact specific. Merely alleging that the conduct was intentional or that the injury was substantially certain to occur does not meet the strict standard of liability to overcome the exclusiveness of workmen's compensation. Without demanding and maintaining the strict standard, South Dakota would be following Ohio's slippery path. Ohio's substantially

certain standard seems to allow actions to go forward which are ordinary negligence actions, i.e., injury is possible, and actions describing wanton or reckless conduct, i.e., injury is probable. That is exactly what workmen's compensation was designed to avoid. An employee should be allowed to recover from an employer if the employer hits the employee on the head with a board—that is an intentional tort. But "substantially certain" should not be allowed to be so watered down as to allow ordinary negligent conduct or reckless or wanton conduct on the employer's part to overcome the exclusivity of workmen's compensation. Every workmen's compensation case would then become a common-law action.

 South Dakota will follow Michigan's direction (*see* footnote 1) by demanding a strict interpretation of substantial certainty. The substantial certainty standard requires that the employer had actual knowledge of the dangerous condition and that the employer still required the employee to perform. Substantial certainty of injury to the employee should be equated with virtual certainty to be considered an intentional tort. Any less of a showing would render our workmen's compensation scheme a hollow shell and would encourage endless litigation in the courts. If an employee worked under such conditions where the employer actually knew of the danger and that injury was substantially certain (virtually certain) to occur, and such injury did occur, the employer should not escape civil liability for placing the employee in such a dangerous position. That is the type of conduct the intentional tort exception deters.

 The facts presented in this case do not demonstrate that the employer actually intended injury or that Harn's injuries were substantially certain to occur or be the inevitable outcome of the employer's acts. The new mill was having mechanical difficulties requiring edging to be handled in the old saw mill. During this work transfer, no one bothered to check whether the anti-kickback device was in place. Disengaging the safety device may have made injury probable or highly probable, but that is not the same as the injury being substantially certain to oc-

cur. This omission may amount to negligent conduct, but it does not rise to intentional tortious conduct on Continental Lumber's part. These facts do not come within South Dakota's intentional tort exception to worker's compensation. There is no evidence that Continental Lumber was substantially certain that Harn's injuries would be the inevitable outcome of its conduct, much less to say that Continental Lumber actually intended Harn's injuries.

Viewing the evidence and the pleadings in a light most favorable to Harn's case, we conclude that Harn has not alleged facts that plausibly demonstrate a substantial certainty that injury would be the inevitable outcome of Continental Lumber's conduct. The trial court improperly denied Continental Lumber's motion for summary judgment. Pursuant to SDCL 15-30-2, this Court "may direct the entry of such judgment or order as the court deems required by the record." Therefore, we reverse the trial court.

MILLER, C.J., and WUEST, J., and DOBBERPUHL, Circuit Judge, concur.

SABERS, J., concurs specially.

MILLER, Circuit Judge, for HENDERSON, J., disqualified.

DOBBERPUHL, Circuit Judge, for AMUNDSON, J., disqualified.

SABERS, Justice (concurring specially).

I am troubled by the time spent on out-of-state opinions when we have solid opinions on this point in this state; especially *VerBouwens* and *Jensen.* In my view, the test from *Jensen* is solid and workable and should not be altered. "The worker must ... demonstrate an actual intent by the employer to injure or a substantial certainty that injury will be the inevitable outcome of employer's conduct." *Jensen,* 469 N.W.2d at 372 (citations omitted). Just as "substantial certainty should not be equated with substantial likelihood," *id.* (citation omitted), neither should it be altered to mean "virtually certain."