Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 HTML Code Â© State Bar of South Dakota, 1999
DAKTRONICS, INC.,
Plaintiff and Appellee,
v.
MILES McAFEE,
Personally and, d/b/a Speed Pitch Indicator,
Golden Gate Sports and David E. Baker,
Defendants and Appellants.
[1999 SD 113]
South Dakota Supreme Court
Appeal from the Third Judicial Circuit, Brookings County, SD
Hon. Rodney J. Steele, Judge
#20620--Affirmed
Roberto A. Lange, Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD
Attorneys for Plaintiff and Appellee.
Frank A. Bettmann, Tina M. Hogue
Finch Bettman Maks, Rapid City, SD
Attorneys for Defendants and Appellants.
Considered on Briefs Feb 24, 1999; Opinion Filed Aug 18, 1999
AMUNDSON, Justice.
[Â¶1] Miles McAfee and David Baker appeal trial court's grant of summary judgment in favor of Daktronics for claims relating to development of a baseball pitch speed indicator. We affirm.
FACTS 
[Â¶2] In March 1988 Baker, a baseball coach at Bacone College in Oklahoma, contacted Daktronics by letter expressing he had an idea which Daktronics would be interested in, but was unable to provide further information without disclosing the idea in its entirety. In April 1988 Baker initiated a meeting with Daktronics, where Baker disclosed an idea of a pitch speed indicator that would display the type and speed of a pitched baseball to spectators at a baseball game. Baker requested Daktronics develop a prototype of such a pitch speed indicator.
[Â¶3] Daktronics built a prototype for Baker by interfacing a radar gun with a console and digital display board. All of the materials necessary for the prototype were readily available on the market. The radar gun was purchased by Baker from MPH Industries and the console and display boards were manufactured by Daktronics.
[Â¶4] After manufacture of the prototype, Miles McAfee became Baker's partner. Baker and McAfee contacted various major league ballparks for the sale of their product. They advertised the product, in conjunction with Daktronics, at the Major League Baseball Annual Conference in Atlanta, Georgia, and the NCAA Conference in Nashville, Tennessee. Between 1988 and 1992, McAfee and Baker ordered four pitch speed indicators from Daktronics.
[Â¶5] In the fall of 1996 Daktronics began manufacturing pitch speed indicators for use in major league ballparks.
[Â¶6] Baker and McAfee claim the speed pitch indicators Daktronics sold to major league baseball teams are essentially the same as the idea first discussed with Daktronics in early 1988. (fn1)  Daktronics sued McAfee seeking a declaratory judgment. McAfee counterclaimed, bringing four causes of action: misappropriation of trade secret, unjust enrichment, conversion, and breach of fiduciary duty. The trial court granted summary judgment in favor of Daktronics.
[Â¶7] McAfee and Baker appeal, raising the following issues:


1. Whether the trial court erred in granting summary judgment on Baker and McAfee's claim of misappropriation of trade secret.
2. Whether the trial court erred in determining no fiduciary duty existed as a matter of law between the parties.
3. Whether the trial court erred by concluding that all remaining counts of the counterclaim (conversion and unjust enrichment) also fail due to no "protectible property interest."
STANDARD OF REVIEW 
[Â¶8] Our standard of review for a grant or denial of summary judgment under SDCL 15-6-56(c) is well settled:


[W]hether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.
Benson v. Goble, 1999 SD 38, Â¶9, 593NW2d 402, 404; Lamp v. First Nat. Bank of Garretson, 496 NW2d 581, 583 (SD 1993); Waddell v. Dewey Cty. Bank, 471 NW2d 591, 592 (SD 1991). "'[S]ummary judgment is appropriate to dispose of legal, not factual questions.'" Benson, 1999 SD 38, Â¶9, 593 NW2d at 404-05 (quoting Harn v. Continental Lumber Co., 506 NW2d 91, 94 (SD 1993) (citations omitted)). However, when "'the facts are undisputed, the issue becomes one of law for this Court to decide." Id. (citing Harn, 506 NW2d at 94 (citing Taggart v. Ford Motor Credit Co., 462 NW2d 493, 498 (SD 1990); Gasper v. Freidel, 450 NW2d 226, 229 (SD 1990))).
DECISION 
[Â¶9] 1. Trade secrets claim.
[Â¶10] McAfee and Baker contend the trial court erred in granting summary judgment because genuine issues of material fact exist as to their claim for misappropriation of a trade secret.
[Â¶11] We have previously addressed the question of what constitutes a trade secret in Weins v. Sporleder, 1997 SD 111, 569 NW2d 16. While the decision in Weins followed a jury trial and raised the issue of failure to grant judgment notwithstanding the verdict, the analysis provided in Weins is determinative of the present case.
[Â¶12] McAfee and Baker bear the burden of establishing the existence of a trade secret. Weins, 1997 SD 111, Â¶18, 569 NW2d at 20 (citations omitted). "Without a proven trade secret, there can be no action for misappropriation, even if defendants' actions were wrongful." 10 Stuart M. Speiser, et al., The American Law of Torts, Â§ 34:23 at 89 (1993). McAfee claims that the "trade secret" in this case is displaying for public viewing the speed and type of pitch thrown within a ballpark.
[Â¶13] SDCL 37-29-1(4) defines "trade secret" as:


[I]nformation, including a formula, pattern, compilation, program, device, method, technique or process that:



(i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
In Weins, this Court concluded the existence of a trade secret is a mixed question of law and fact. The legal question is, "'whether the information in question could constitute a trade secret under the first part of the definition of trade secret'" under SDCL 37-29-1(4). Weins, 1997 SD 111, Â¶16, 569 NW2d at 20 (quoting Uncle B's Bakery, Inc. v. O'Rourke, 920 FSupp 1405, 1427 (NDIowa 1996) (quoting Economy Roofing & Insulating Co. v. Zumaris, 538 NW2d 641, 648 (Iowa 1995)). SDCL 37-29-1(4) defines trade secret as: "information, including a formula, pattern, compilation, program, device, method, technique or process." The factual inquiry involves the remaining subsections of SDCL 37-29-1(4)(i) and (ii). Id. at Â¶16, 569 NW2d at 20.
[Â¶14] McAfee and Baker claim a trade secret in the concept of displaying speed and type of pitch thrown for the public to view at a ballpark. However, "'the commonly accepted definition of a trade secret does not include a marketing concept or new product idea submitted by one party to another.'" Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F2d 1173, 1176 (2ndCir 1993) (quoting 2 R. Milgrim, Milgrim on Trade Secrets Â§ 8.03 at 8-31 (1992 & Supp. 1992) (quoting Richter v. Westab, Inc. 529 F2d 896, 900 (6thCir 1976))) (citations omitted). Therefore, simply possessing a non-novel idea or concept without more is generally, as a matter of law, insufficient to establish a trade secret. See Frink America, Inc. v. Champion Road Machinery Ltd., 1999 WL 304686, at 6, 48 FSupp2d 198 (NDNY 1999); Hudson Hotels, 995 F2d at 1177.
[Â¶15] Even if McAfee's product passed the legal inquiry of SDCL 37-39-1(4), it fails under the remaining subsections. The first subsection requires there to be economic value that is not readily ascertainable by other means. Weins, 1997 SD 111, Â¶20, 569 NW2d at 21 (citing SDCL 37-29-1(4)(i)). In Weins, we adopted the Seventh Circuit Court of Appeals definition that, "'this requirement precludes trade secret protection for information generally known within an industry even if not to the public at large.'" Weins, 1997 SD 111, Â¶20, 569 NW2d at 21 (quoting Mangren Research & Dev. v. National Chem. Co., 87 F3d 937, 942 (7thCir 1996)).
[Â¶16] Baker and McAfee argue that the issue of whether information is generally known or readily ascertainable is a question of fact. See Weins, 1997 SD 111, Â¶17, 569 NW2d at 20. Ordinarily, this is true. Moss, Adams & Co. v. Shilling, 224 CalRptr 456, 458 (CalCtApp 1986). However, a court may determine a question of fact by summary judgment if it appears to involve no genuine issues of material fact and the claim fails as a matter of law. Moore v. Marty Gilman, Inc., 965 FSupp 203, 217 (DMass 1997) (granting summary judgment where plaintiff's claim failed as a matter of law where information was already in the public domain and could not be a trade secret); Nordale, Inc., v. Samsco, Inc., 830 FSupp 1263, 1273 (DMinn 1993) (granting summary judgment on trade secrets claim where no reasonable efforts to maintain secrecy), aff'd, 86 F3d 1179 (8thCir 1996); Aerospace America Inc., v. Abatement Techs., Inc., 738 FSupp 1061, 1070 (EDMich 1990) (granting summary judgment because information openly advertised could not be trade secret and there was no confidential relationship); Moss, Adams & Co., 224 CalRptr at 458 (holding plaintiff's claim failed as a matter of law, the use of names on rolodex did not constitute trade secret).
[Â¶17] Baker and McAfee's concept involved combining the use of a radar gun, a console, and a display. It is undisputed that all of these items were readily available on the market. "Combining these materials cannot be considered a trade secret if the formula was 'within the realm of general skills and knowledge' in the relevant industry." Weins, 1997 SD 111, Â¶21, 569 NW2d at 21 (citing Computer Care v. Service Sys. Enters., Inc., 982 F2d 1063, 1072 (7thCir 1992) (quoting Service Ctrs. of Chicago, Inc. v. Minogue, 180 IllApp3d 447, 129 IllDec 367, 371, 535 NE2d 1132, 1136 (1989))) (other citations omitted). "Thus, the focus turns to the 'ease with which information can be developed through other proper means: if the information can be readily duplicated without involving considerable time, effort or expense, then it is not secret.'" Weins, 1997 SD 111, Â¶21, 569 NW2d at 21 (quoting Computer Care, 982 F2d at 1072) (quoting Hamer Holding Group, Inc. v. Elmore, 202 IllApp3d 994, 148 IllDec 310, 311, 560 NE2d 907, 908 (1990))).
[Â¶18] There is nothing novel about combining these materials to display speeds and types of pitches thrown for the public's view. It is undisputed Daktronics had itself utilized a speed indicator with a display in sporting events such as ski jumping prior to 1988. Further, prior to 1988, the Jugs corporation had developed and been using such a speed pitch indicator to display the speed of a pitched baseball in amusement arcades. The product in which McAfee and Baker claim a trade secret was within the general knowledge of the relevant industry, and, in fact, already existed, albeit for different use.
[Â¶19] In addition, this Court notes that Daktronics is not alone in designing speed pitch displays for major league baseball stadiums. As of the time of the motion for summary judgment, the speed of pitches were displayed at Houston's Astrodome, the Veterans Stadium in Philadelphia, Pittsburgh's Three River Stadium, San Francisco's Candlestick Park and the Skydome in Toronto. Competitors of Daktronics had designed the display systems for each of these ballparks.
[Â¶20] Considering the above, clearly the concept in which McAfee and Baker claim to possess a trade secret contains ingredients that were all in the public realm, could be easily duplicated and, in fact, were already in existence. See Weins, 1997 SD 111, Â¶26, 569 NW2d at 22. As the District Court of Massachusetts noted in a trade secret case dealing with public knowledge:


Indeed, it is not even enough to warrant protection that the information is known by sufficiently few people to make it commercially valuable. After all, many types of professionals have specialized knowledge and information that they offer to the public in exchange for a fee. â¦ The same is true here. Whether or not the information conveyed by plaintiffs was new and valuable to defendants, and whether or not it alerted defendants to a potential market about which defendants otherwise would have remained ignorant, the information was already in the public domain. Thus, it was not a trade secret.
Moore, 965 FSupp at 217.
[Â¶21] The trial court found, based on the submissions in resistance to the motion for summary judgment, that Baker and McAfee failed to carry their burden to establish a trade secret.
[Â¶22] 2. Breach of fiduciary duty.
[Â¶23] McAfee and Baker claim Daktronics breached a fiduciary duty by using information obtained from McAfee and Baker. "The existence of a fiduciary duty and the scope of that duty are questions of law for the court." High Plains Genetics Research, Inc. v. J.K. Mill-Iron Ranch, 535 NW2d 839, 842 (SD 1995) (citing Garrett v. Bankwest, Inc., 459 NW2d 833, 839 (SD 1990)). South Dakota has adopted the view that:


[F]iduciary duties are not inherent in normal arm's-length business relationships, and arise only when one undertakes to act primarily for another's benefit. The law will imply such duties only where one party to a relationship is unable to fully protect its interest and the unprotected party has placed its trust and confidence in the other.
High Plains Genetic Research, Inc., 535 NW2d at 842 (citing Taggart v. Ford Motor Credit Co., 462 NW2d 493, 500 (SD 1990) (citing SDCL 55-7-2(2)). McAfee and Baker argue Daktronics has a fiduciary duty because it shared a "joint pecuniary interest" in marketing by the trade shows in December of 1988 and January of 1989 to major league baseball and NCAA. However, the suggestion of a joint venture is denounced by McAfee's own admission in a letter to Daktronics, "In the past I personally mentioned to you about doing a joint venture with this unit and you declined." 
[Â¶24] It has been stated:


One party cannot transform a business relationship into one which is fiduciary in nature merely by placing trust and confidence in the other party. There must be additional circumstances, or a relationship that induces the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection.
Ainsworth v. First Bank of South Dakota, 472 NW2d 786, 788 (SD 1991). Daktronics may have had superior knowledge and technical skills in the development and marketing of a speed pitch indicator, but McAfee and Baker were not in a dependent position, lacking in mental acuity or business intelligence. See High Plains Genetic Research, 535 NW2d at 842. This was a routine business relationship. The trial court was correct in concluding that based on this record there was no fiduciary relationship.
[Â¶25] 3. Conversion.
[Â¶26] Baker and McAfee also allege that the information imparted by them to Daktronics was proprietary in nature and was converted by Daktronics. "Conversion is the act of exercising control or dominion over personal property in a manner that repudiates the owner's right in the property or in a manner that is inconsistent with such right." Wyman v. Terry Schulte Chevrolet, Inc., 1998 SD 96, Â¶32, 584 NW2d 103, 107; Ward v. Lange, 1996 SD 113, Â¶17, 553 NW2d 246, 251; Scherf v. Myers, 258 NW2d 831, 834 (SD 1977). Baker and McAfee appear to argue that Daktronics converted their idea or concept of displaying the speed and type of pitch thrown to the public view.
[Â¶27] The trial court concluded the claim of conversion failed because it depends on a wrongful interference with a property interest. We agree. McAfee and Baker have failed to show a property interest. Ideas which are not novel and "are in the public domain may freely be used by anyone with impunity." Murray v. National Broad. Co., Inc., 844 F2d 988, 993 (2dCir 1988), cert denied, 488 US 955, 109 SCt 391, 102 LEd2d 380 (1988). Since there was no property interest, there could be no conversion.
[Â¶28] We have considered the other issue raised by appellants, and conclude that it is without merit.
[Â¶29] Affirmed.
[Â¶30] MILLER, Chief Justice, SABERS, KONENKAMP, and GILBERTSON, Justices, concur. 
Footnotes
1.  The displays are unlike McAfee and Baker's speed pitch indicator in that Daktronics' displays are permanent installations and show additional data other than pitch speed and type of pitch.